Matter of the Petition of the Columbia Trust Company for the Construction of the Will of Clinton Stephens, Deceased.

(Surrogate's Court, Bronx County, November, 1916.)

**Wills — construction of — bequest and devise to trustees — powers — corporations — trusts.**

Under a bequest and devise by the testator to trustees in trust, to hold the principal in separate trusts for each beneficiary and pay the income to the beneficiaries named during their respective lives, it appeared that the decedent owned capital stock of a corporation and was seized of a large amount of real property. The will also directed that the decision in writing of one of the trustees should prevail and the trustee accordingly directed a division of the shares of stock of such corporation among the beneficiaries under the claim that the trustees had the right not only to terminate the entire trust for the benefit of any one beneficiary, but to terminate any part of each trust, and pay over any part of the principal. The other trustee contended that the will did not confer upon the trustee the power to terminate any part of the trust, except as to the whole of the trust. A subdivision of the will provided that upon the transfer mentioned therein the trust should in all respects terminate and that the trustees might terminate any of the trusts at such time as they in their absolute discretion might determine. Another subdivision provided, among other things, that the trustees could pay to the beneficiaries in addition to the income in any one calendar year an aggregate sum not exceeding $2,000.

After decedent's death, the corporation whose stock the trustees held, declared a dividend of part cash and part stock, and one trustee urged that if the dividend in question were an extraordinary one it should be distributable to the life tenants only as to such portion as was earned after decedent's death, whereas the other trustee claimed that the terms of the will were comprehensive enough to require all of the profits, income and dividends, whether extraordinary or not, to be applied to the use of the present life beneficiaries.

Misc.]    Surrogate's Court, Bronx County, November, 1916.

On construing the will in proceedings under section 2615 of the Code of Civil Procedure, held:

(1) That the trustees have such power as the will gives them and no more, and while a construction giving .the right to terminate the trust in part where the trustee had the right to terminate the trust as a whole would be favored, such construction- would be warranted only when not contrary to the intention of the testator; that the question is one of intent on the part of the testator; that such intent must be ascertained and given effect if possible when not contrary to some statutory enactment; and that as the provision of the will under consideration did not stand alone it must be examined in the light of the remaining provisions of the will of which it forms a component part, and all of the provisions of the will must be given effect if they are reconcilable, one with the other.

(2) That the trusts in question cannot be terminated in part, except to the extent provided for in the will; that if it is desired to terminate any of the trusts, the whole of the principal and accrued income must be transferred so that the trust may terminate in all respects; that if it became necessary to pay over only a part of the principal of any such trust such payment cannot exceed $2,000 in any one year.

Proceeding for the construction of a will under section 2615, Code of Civil Procedure.

Davies, Auerbach & Cornell, for petitioner.

Walter H. Thacher, Kellogg & Rose, Barber, Watson & Gibboney, for respondents.

James F. Donnelly, Ely Neumann, special guardians for infant respondents.

Schulz, S.   By his last will and testament, the testator, after providing for the payment of his debts and funeral expenses, gave, devised and bequeathed all the rest, residue and remainder of his estate, real and personal, to his son-in-law, Albert E. Downes, and the

Surrogate's Court, Bronx County, November, 1916.    [Vol. 97.

Columbia Trust Company, a corporation, in trust, to hold in so many equal shares or portions "wholly or in part actually divided and set apart from time to time, as the trustees may deem best," as equal the number of his children living at the time of his death or then dead leaving issue them surviving. He also provided that the income of the various trust funds be paid to his children for whom they were held in trust, during their respective lives, and upon their deaths that the principals be paid to their surviving issue and, if there be none of the latter, then to the next of kin of such deceased children.

The decedent at the time of his death owned 818 shares of the capital stock of a corporation and was seized of a large amount of real property. The trustees have duly qualified and have received from the executors a portion of the personal property of the decedent, namely, 600 shares of the stock referred to, and have taken possession and are in control of the real property belonging to the estate. The latter is valued at over $200,000 and the 600 shares of stock with the dividends hereinafter referred to are esti-. mated to be worth between $162,000 and $165,000.

Paragraph "Third" of the decedent's will provides as follows:

"(g) I hereby authorize and empower the trustees hereunder, at such time as they in their absolute discretion may determine, to terminate the trusts existing in respect of any share of my estate held in trust under the provisions hereof during the lifetime of the beneficiary then in receipt of the income of such trust, and to pay over, transfer and deliver the principal and income of such share and any accrued income that there then may be, to the person who shall be entitled under the provisions hereof to the income of such share in respect of which the said trust is terminated, and

upon such transfer, delivery and paying over said trust shall in all respects terminate, and the said property so delivered, transferred and paid over shall become the absolute property of such beneficiary.

"(h) Whenever under the terms of this, my Will, the said trustees are authorized or empowered to exercise any discretion, it is my will and I do direct that the decision in writing of the said Albert E. Downes, and that of his successor, as hereinafter provided for, shall at all times prevail, and the acts and doings of the other trustee hereunder, pursuant to the judgment of the said Albert E. Downes, and his said successor, shall be and shall be deemed to be in accordance with this, my Will, and such trustee, following the directions of the said Albert E. Downes and his successor, shall not be subject to any liability or responsibility therefor."

On or about April 8, 1916, the executors delivered the certificates of the 600 shares of stock stated, to the trustees, and Mr. Downes, one of the trustees, directed that a division be made pursuant to the provisions of the will and that the several shares be set apart to the beneficiaries in such a manner that each of the adult beneficiaries receive 120 shares and each of the two infant beneficiaries, being the children of a deceased child of the testator, receive 60 shares. Mr. Downes, the trustee above named, then gave his direction and stated it to be his decision and judgment that the number of shares allotted to each trust for the benefit of an adult beneficiary be transferred to the beneficiary to become his or her absolute property, and that the trust be terminated to the extent of such transfer, asserting that such direction and decision was made as an exercise of the discretion conferred upon him by the provisions of subdivision "h" above quoted.

As a result of this action on his part, a difference of

opinion has arisen between the trustees. Mr. Downes claims that the trustees have a right, not only to terminate the entire trust for the benefit of any one beneficiary, but to terminate any part of such trust and transfer, deliver and pay over any part of the principal thereof. The other trustee, the Columbia Trust Company, contends that the will does not confer upon the trustees the power to terminate any trust, except as to the whole of such trust, personalty and realty, or that it is at least doubtful whether the trustees have that power and hence that an adjudication should be had. I am, therefore, requested pursuant to section 2615 of the Code of Civil Procedure to construe the testator's will and determine the controversy that has arisen.

The trustees have such power as the will gives them and no more. *Allen* v. *De Witt*, 3 N. Y. 276; *Woerz* v. *Rademacher*, 120 id. 62; *Hillen* v. *Iselin*, 144 id. 365. If the provision giving the right to the trustees to terminate the trust and to transfer, deliver and pay over the principal and accrued interest stood alone, I would be inclined to the belief, as I indicated when this matter was argued, that, having given the trustees the right to terminate the trust as to the whole of the principal, the testator intended to invest them with the lesser power of terminating the trust as to a part of the same. No adjudication in this state specifically so holding has been drawn to my attention, but such construction would find support in the reasoning which has been applied in cases where under the power to appoint a fee it has been held that the donee of the power had the right to execute the same to the extent of an estate for life or for years. Sugden on Powers (3d Am. ed.), 391; *Crooke* v. *County of Kings*, 97 N. Y. 421; *McLean* v. *McLean*, N. Y. L. J. Oct. 19, 1916.

While I would favor a construction giving the right

to terminate the trust in part where the trustee had the power to terminate the trust as a whole, I am warranted in doing this only when such a construction is not contrary to the intention of the testator. The question after all is one of intent on the part of the testator. Chaplin, Express Trusts & Powers (1897), § 627; *Roe* v. *Vingut,* 117 N. Y. 204; *Tilden* v. *Green,* 130 id. 29; *Robinson* v. *Martin,* 200 id. 159; *Matter of Osborne,* 209 id. 450, 458. Such intent must be ascertained and given effect if possible and not contrary to some statutory enactment. *Hull* v. *Hull,* 24 N. Y. 647.

The provision referred to does not stand alone, and to ascertain what was in the mind of the testator we must examine it in the light of the remaining provisions of the will of which it forms a component part, and give effect to all of its provisions, if they are reconcilable one with the other. *Egerton* v. *Conklin,* 25 Wend. 224; *Matter of Title Guarantee & Trust Co.,* 195 N. Y. 339; *Chew* v. *Sheldon,* 214 id. 344.

In subdivision "g" of paragraph "Third" which is quoted above, it appears that the testator, after providing for the termination of any of the trusts and the transfer, delivery and paying over of the principal and accrued income, provides that upon "such transfer, delivery and paying over, *said trust shall in all respects terminate,* and the said property so delivered, transferred and paid over shall become the absolute property of such beneficiary." It is evident that the transfer, delivery and paying over which the testator meant was such as would terminate the trust "*in all respects.*" The delivery, transfer or paying over of a part of the principal of any trust fund would not terminate such trust "*in all respects;*" it would still exist as to the remainder of the principal and accrued income in the hands of the trustees. The only transfer, delivery or payment over that would terminate any of the trusts

" *in all respects* " would be a transfer, delivery and payment over of all of the principal and accrued income. If it had been the intention of the testator to empower the trustees to make a partial termination by paying over a part of the principal, I do not think that he would have used the language referred to, because in that event the trusts would not be terminated " *in all respects* " but only as to so much as was paid.

Again, the testator provided in the same subdivision that the trustees might terminate any of the trusts " at such *time* as they in their absolute discretion may determine." If he had intended a partial termination of any of such trusts I do not believe that he would have used the word " time." I deem it far more probable that in an instrument prepared with the skill and care with which this will was prepared he would have used the plural, " times," if it had not been his intention that the trust was to be terminated in all respects by the paying over, transfer and delivery of the principal and accrued interest at one time.

The will also contains in paragraph " Third " the following:

"(d) Whenever, in the judgment of the said trustees, the net income applicable to the use of any of the beneficiaries provided for under any of the terms of this Article Third of my Will is not sufficient to provide a comfortable support and maintenance for such beneficiary, the said trustees, in the exercise of their sole and absolute discretion, may pay over in any year and from time to time such portion of the principal held in trust for such beneficiary respectively as they may deem proper; provided, however, that whenever such advances from principal are made, the payments of income and principal to any one beneficiary shall not in any one calendar year exceed the aggregate sum of Two Thousand Dollars ($2,000)."

The necessity for incorporating such a provision in his will if by subdivision " g " he intended to authorize the trustees to pay over portions of the principal to the beneficiaries is not apparent. The exercise of the right to pay over a part of the principal and accrued income had the legal effect of terminating the trusts as to the part thus paid over. The testator was careful, however, to limit the amounts which could thus be paid, and this would indicate an intention on his part that none of the trusts should under any circumstances be terminated partially as to more than $2,000 of the principal in any one year, and then only when in the judgment of the trustees the net income applicable to the use of any beneficiary was not sufficient to provide for his comfortable support and maintenance. The provision in the subdivision last quoted would be entirely nullified if there were read into the language of subdivision " g " an intention on the part of the testator that any trust could be partially terminated, because in the latter event such trust might be terminated as to $3,000, $4,000, $10,000 or $50,000 of the principal. Under such a construction subdivision " d " and subdivision " g " would be contradictory. They are in absolute harmony, however, if subdivision " g " be construed to permit only the total termination of any trust.

For the reasons above stated, I reach the conclusions that the trusts in question cannot be terminated in part and that the principals of such trust funds cannot be partially paid to the life beneficiaries under the provisions of subdivision " g " of paragraph " Third " of the decedent's will. If it is desired to terminate any of the trusts the whole principal must be paid, transferred and delivered so that the trust may terminate *" in all respects."* If it becomes necessary to pay over only a part of the principal of any such trust, such pay-

Surrogate's Court, Bronx County, November, 1916.    [Vol. 97.

ment must be under subdivision "d" of paragraph "Third," and cannot under any possible circumstances exceed $2,000 in any one year. *Hull* v. *Hull,* 24 N. Y. 647.

The conclusions which I have reached upon the first question submitted for determination makes it necessary for me to consider and determine the second controversy which has arisen between the trustees.

The decedent died on October 1, 1915. On April 8, 1916, the executors transferred the 600 shares of stock, heretofore referred to, to the trustees. After the death of the decedent and on or about April fifth, the petitioner alleges that the said corporation declared a dividend of thirty per cent cash and twenty per cent stock upon its common stock, payable on or after April 29, 1916. One of the trustees urges that if the dividend in question is an extraordinary one, it should be distributable to the life tenants only as to such portion as was earned after October 1, 1915, the date of the testator's death, whereas the other trustee is of the opinion that the terms of the will are comprehensive enough to require all of the profits, income and dividends, whether extraordinary or not, to be applied to the use of the present life beneficiaries.

The case is one which must be determined under the law as laid down in *Matter of Osborne, supra.* There it was stated that it should be held that "1. Ordinary dividends, regardless of the time when the surplus out of which they are payable was accumulated, should be paid to the life beneficiary of the trust. 2. Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust, or invested in the stock, in which case such extraordinary

dividends should be returned to the trust fund or apportioned between the trust fund and life beneficiary in such a way as to preserve the integrity of the trust fund.''

Whether the dividend under discussion is ordinary or extraordinary does not depend upon its size (*Lowry* v. *Farmers Loan & Trust Co.*, 172 N. Y. 137); nor upon whether it was declared in cash or in stock. *McLouth* v. *Hunt*, 154 N. Y. 179.

It is, therefore, necessary to determine whether the dividend under discussion was an ordinary dividend or an extraordinary dividend without considering the manner of its payment.

In *Matter of Osborne, supra*, p. 475, it was said: '' We think that in each case the court should look into the facts, circumstances and nature of the transaction and determine the nature of the dividend and the rights of the contending parties according to justice and equity;'' and again, page 476: '' The dividends usually declared by corporations are the ordinary dividends such as are declared from year to year or at other regular dividend periods. Extraordinary dividends are the exception.''

While from the allegations of the petition it would appear that the dividend in question was paid out of the income which accrued during the year of the testator's death, and that all of said income was not distributed by the payment of said dividend, such allegations are based partly on unverified communications received from the corporation and an extract from Poor's Manual. I think that with a view to greater certainty a hearing should be had at which all parties interested may have a chance to appear and at which evidence should be produced fixing definitely the time during which the surplus, out of which the dividend was declared, was earned, showing whether the divi-

dend was one of those usually declared by the corporation at some regular dividend period and fixing the amount of the accumulated surplus at the date of the death of the decedent. Before stating a conclusion as to the second question submitted, therefore, I will set the matter down upon the calendar for November 15, 1916, for hearing upon the matters indicated.

Decreed accordingly.