In the Matter of the Judicial Settlement of the Intermediate Account of JOHN T. E. VAN DERVEER, as Executor of CHARLES H. BAECHLER, Deceased.

Surrogate's Court, Bronx County, November, 1923.

Wills — construction — trusts — payment of income implied — infants — appointment of testamentary guardians ineffective — power in trust in trustees in respect to infants' property — conditions subsequent.

Executors and administrators — accounting — corporation owned by testator — when certificates of stock in name of others still in stock book deemed to belong to testator — title to bonds and mortgages found among testator's effects — claim payable under section 211, Surrogate's Court Act — surcharging of executors.

The will of testator by which he created a trust fund of $10,000 for each of two infant daughters of his stepbrother, whom he termed his "nieces," expressed his desire that no part of his estate should go to any institution, church or congregation of a certain religious faith. In the event that either of his "nieces" decided to adopt such faith the will provided that the bequest to them " shall fail and be forfeited, this condition being imposed by reason of religious influences brought to bear upon said children by their aunt." No provision was made for the payment of income to the beneficiaries of the trusts. One-third of the residuary estate also was bequeathed to each of said infant nieces. By the third paragraph of his will testator in appointing the testamentary trustees as his executors expressed his desire that they qualify and act as guardians of the infant nieces " until such time as the principal of the bequests hereunder to them is paid, when they shall have reached the age of twenty-one years." *Held*, that while the attempted appointment of testamentary guardians was ineffective as such, the intent of the testator may be carried out by holding that the executors and trustees had a power in trust and have thereunder the same authority with respect to the property of the infants as they would have had if their appointment as testamentary guardians had been effective; that the testator must be presumed to have intended to dispose of his entire estate and that the beneficiaries of the trusts should enjoy the income; that there being no bequest in the third paragraph of the will the testator by the word " hereunder " must have meant under his will, which would include the bequests in trust; that the infants are entitled to have applied to their support, maintenance and education so much of the income from the trust funds of $10,000, and from their interests in the residuary estate and from the principal of the latter, as may be necessary, until they reach the ages of twenty-one years, respectively, when the principals are to be paid to them unless they are divested by a breach of the condition heretofore referred to, if the same be held to be valid.

The attempted condition, to which no time limit was set, was a condition subsequent and the infants were vested with the respective legacies subject to the trusts as to the $10,000 amounts and to a power in trust as to their residuary interests and subject to being divested by breach of the condition, if the same is valid and enforcible.

The court for reasons assigned deeming it unnecessary and inadvisable to presently decide whether the condition relates only to the $10,000 trust funds or also to the infants' interest in the residue, makes no determination as to any of these

matters, but without prejudice to a further application if and when it becomes necessary to determine the same.

Upon the organization by testator of a corporation which for all practical purposes was a part of his estate eighteen of the twenty shares of its capital stock were issued to him, one to his stepbrother who was in his employ and one to the attorney who incorporated the company, neither of whom ever contributed money or property to the corporation or paid for the stock standing in their respective names. The testator making no distinction between property in his own name and that in the name of said corporation, did as he pleased with reference to its affairs without protest from either of the other stockholders. At the death of testator the certificates of stock issued to his stepbrother and the attorney were still in the stock book which was kept in testator's desk. *Held*, that no dividends having been paid upon said two shares of stock and there being no evidence that any moneys had been drawn out of the corporation either by the stepbrother or the attorney, said two shares of stock belonged to the testator at the time of his death and the accounts of his executors will be surcharged therewith.

It appearing that it was a custom of testator to take real estate and mortgages in the name of his stepbrother and the testimony seeming to warrant a finding that a bond and mortgage so taken together with an unrecorded assignment thereof by the stepbrother to testator and a title policy were found in an envelope in decedent's safe, it will be held that the bond and mortgage belonged to testator and the accounts of his executors will be charged with the inventory value thereof.

With a bond and mortgage made to testator's stepbrother were found a deed of the property on which said mortgage was a lien from the mortgagor to testator and an agreement signed by the grantor referring to the deed and mortgage and reciting that taxes and assessments had been allowed to accumulate in violation of the terms of the mortgage, that the testator controlled the mortgage and that he would reconvey the property to the grantor named in the deed provided she paid the mortgage, etc., within two years of the date of said agreement. *Held*, that in the absence of an assignment bearing his deceased stepbrother's signature the mere fact that the bond and mortgage were found in a drawer in testator's safe with other property belonging to him, was insufficient to prove his ownership of said bond and mortgage and it will be held that they were the property of testator's stepbrother.

Upon satisfactory proof that at the time of his death testator had not paid over to one M., for whom he had made investments, an amount of principal and interest collected by him on a bond and mortgage owned by said legatee, a claim therefor against his estate will be allowed under section 211 of the Surrogate's Court Act.

A corporation organized after the death of decedent to take over his business occupied without rent the real estate owned by him where he had for many years conducted his business. In order to continue the business in accordance with the desire of testator, said corporation found it necessary to install a heating plant and expend money for electrical installation. There was no contention that the amount so expended was less than the rental value nor was there any proof as to such rental value. *Held*, that assuming that the executors as such had a right to demand rent their accounts should not be surcharged for setting off the amount expended as against any possible rent, and an objection that the executors had failed to collect rent will be dismissed.

PROCEEDING to settle the accounts of the executor and for construction of a will.

*Neier & Van Derveer* (*John T. E. Van Derveer* and *Thomas A. McKennell*, of counsel), for executors.

*Samuel Marion*, for Mary Smith and Augusta L. Ambs.

*Thomas J. Cuff*, for Ignatz Hauser and Henry Hauser, general guardians of Ethel May Hauser et al.

*Davies, Auerbach & Cornell* (*Sydney G. Soons*, of counsel), for the Columbia Trust Company as general guardian of the estate of Bertha Louise Berchtold et al.

*Stetson, Jennings & Russell*, for the Guaranty Trust Company.

SCHULZ, S. This is an intermediate accounting of an executor in which, in addition to rendering his accounts, he asks for a construction of various provisions contained in the will of the decedent hereafter more fully referred to.

Three answers were filed; one on behalf of the guardians of the persons of two infants interested in the estate, another by the guardian of the estate of such infants, and the third by two of the adult legatees. The answer filed by the guardians of the persons refers solely to the question of construction, but upon the hearing the same was amended to include one other additional objection. The answer filed by the adult legatees was also amended by inserting objections to two items of credit, one for a heating plant and the other for electrical work installed in certain premises owned by the decedent at the time of his death. The other answer contained objections which are practically to the same effect as those in the answer of the adults except that the latter contains some objections not embraced in the former.

Upon the hearing, and with the consent of all parties, the administrator *de bonis non* of George Hauser was permitted to intervene. This administrator was the guardian of the estates of the infant children of George Hauser, and as the interests of one of the infants in the estate of the decedent clash with her interests in the estate of her father, the attorney for the guardian of the person of such infant was thereupon appointed as her special guardian.

A number of the objections in the answer of the adults and in that of the guardians of the infants' estates were withdrawn upon certain conditions which appear in the record and are not material here. I shall now pass upon the remaining objections, and where no other disposition is made of any objection such objection is dismissed.

It appears that the decedent for some years was in the real estate business and that he had in his employ one George Hauser who, in this proceeding, has been termed his " half brother " and

who is the father of two of the infant parties. He was upon a salary merely and does not appear to have been interested at all in the business of the decedent, except as an employee.

The decedent during his lifetime had organized a corporation known as The Royal Bronx Realty Co., Inc., presumably for convenience in the handling of his real estate operations. Upon the incorporation, eighteen of the twenty shares of stock comprising its capital stock were issued to the decedent, one to Hauser, and one to an attorney who had an office in the place of business of the decedent and who incorporated the company. The assets of the corporation at the time of its formation were valued at $2,000, and at the time of the death of the decedent at approximately $100,000. It does not appear that either Hauser or the attorney ever contributed any money or any property to the corporation or paid anything for the shares of stock standing in their respective names. The certificates were never removed from the stock book and delivered to them and were still in the stock book which was kept in the decedent's desk, when the decedent died. No dividends were ever paid, and there is no evidence of any moneys ever having been drawn out of the corporation by either Hauser or the attorney. The decedent did what he pleased with reference to the affairs of the corporation without protest from either of them or any explanation to them. He made no distinction between property in his name and that in the name of the corporation and no minutes were kept and no meetings held. It also appears from the evidence that the decedent had acted as a nominal stockholder upon occasions when the same attorney formed other corporations as matters of convenience and as favors to him.

Upon all of the evidence presented I am satisfied that the two shares of stock in question belonged to the decedent at the time of his death and that the executor is chargeable therewith and he will be so surcharged.

In the matter of the so-called Killenberg bond and mortgage inventoried at the sum of $5,563.87, an action is pending in the Supreme Court. All of the parties appearing before me, however, have requested that I determine the matter on this accounting to prevent further litigation and expense and have stated that they are willing to discontinue the action referred to, if I do so. It is upon that request and statement that I presume to adjudicate the matter.

It appears that the bond and mortgage in question in the sum of $5,500 was made to George Hauser. An unrecorded assignment concededly bearing his signature by which he assigned the mortgage to the decedent was found with the bond and mortgage and a title

policy in an envelope in decedent's safe. Hauser had access to this safe, but it does not appear that he ever kept any of his own papers there. The documents in question were in a drawer among other papers which had no relation to Hauser's affairs, but which belonged to the decedent and referred to property which it is not disputed was owned by him. No other papers in the drawer referred to were in the name of Hauser.

It appears to have been a custom of the decedent to take real estate and mortgages in the name of his relative Hauser in which the latter had no ownership. It was possible to trace but three items of interest paid and all of these were received and retained by the decedent. The check books used by the decedent and kept in his place of business, showed checks drawn to Killenberg at or about the time the bond and mortgage bear date and which appear to be payments on account of the principal of the same.

The evidence seems to me to warrant a finding that the bond and mortgage in question belonged to the decedent and I so determine and the accounting executor will accordingly be charged with the inventory value thereof, to wit, $5,563.87.

With regard to the so-called Totero bond and mortgage, ownership is also in doubt. Both of these documents were made by Consetta Totero to George Hauser and with them were found a deed of the property on which the mortgage was a lien, from Totero to the decedent and an agreement signed by the grantor. The latter refers to the deed and mortgage last mentioned and recites that taxes and assessments have been allowed to accumulate in violation of the provisions of the mortgage; that the decedent controls the mortgage and that he will reconvey the property to the grantor named in the deed provided she pays the mortgage, etc., within two years of the date of the agreement.

It will be observed that there is no document here bearing the signature of the decedent, as in the case of the Killenberg bond and mortgage, by which he purports to divest himself of the ownership of the mortgage. It is urged, however, that the bond and mortgage belonged to the decedent and that the decedent took a deed to the property when the mortgagor defaulted and did not take an assignment of the mortgage in order to prevent a merger.

While it is quite probable that this bond and mortgage also belonged to the decedent, the burden of proving it was upon the petitioner and it has not been sustained. In the absence of an assignment bearing the decedent's signature, such as existed in the case of the Killenberg papers, I do not deem the fact that the bond and mortgage were found in a drawer of the decedent's safe, with other documents belonging to him, sufficient to establish his owner-

ship thereof.   The statement by his attorney that the money loaned belonged to the decedent is a conclusion, and the facts upon which it is based do not appear.   Under the circumstances, I find the evidence insufficient to prove ownership on the part of the estate and hold that the bond and mortgage were the property of George Hauser.

In his capacity as a real estate broker, the decedent took care of the investments of one of the adult legatees, Mary Smith, with whom he boarded for many years.   He had charge of the collection of interest on various mortgages upon which he had invested some of her funds and among them was one known as the Kerr mortgage, the principal of which was payable in installments. Mrs. Smith made no claim that any interest on other mortgages was still due her, but did urge that she had not received the installments of principal of the Kerr mortgage and a small amount of interest upon the same at the time of the death of the decedent. The attorney and executor of the decedent testified that the books of the latter indicated that he had collected the sum of $350 in installments of principal and a total amount of $24.63 in small items of interest, and that there was no record of such amounts having been paid over to Mrs. Smith.   I am satisfied that the decedent had not made the payment at the time of his death, probably because he was waiting until the balance of the principal of the mortgage was paid off, and I accordingly determine that the estate is indebted to Mary Smith in the sum of $374.63 by reason thereof.   Surrogate's Court Act, § 211.

About a year after the death of the decedent a corporation was formed to take over his business.   This corporation occupied the real estate owned by the decedent and where he had conducted his business for many years prior to his death.   It paid no rent for its occupancy, but in order to continue to do business there, found it necessary to install a heating plant at an expense of $1,725, and also to expend $434.33 for electrical installation.   Objection is made that the executor has failed to collect rent from the corporation during the time of its occupancy and he states that he set off against any possible rent the amount expended by the corporation in making the improvements stated.

There is no contention that the amount expended was less than the rental value, nor is there any proof as to such rental value. The corporation was, for all practical purposes, a part of the estate of the decedent.   In his will he expressed his desire that the business conducted by him be continued either in the name of the estate or incorporated.   To follow that direction it appears to have been necessary to make the improvements set forth.

Under all of the circumstances, I do not think that the executor

should be surcharged for setting off the amount expended as against any possible rent, assuming that he had a right to demand such rent as executor.   The objection is dismissed.

I proceed now to the questions of construction which are also involved.

In his last will and testament the decedent referred to George Hauser as his stepbrother and made provisions for the latter's children whom he termed his nieces which, so far as material, are as follows:

" *Second.*   *   *   *   I give unto the Guaranty Trust Company and John T. E. Van Derveer, in Trust for my Nieces Ethel May Hauser and Vivian Helen Hauser, the sum of $20,000.00 being $10,000.00 for each of them, it is my desire that said fund be invested and re-invested in good first Mortgages in the City of New York, or Cities in Westchester County.

" I give unto my Niece Bertha Louise Hauser, the sum of $500.00   *   *   *."

He then states that his further desire is that no part of his estate " shall go " to any institution, church or congregation of a certain religious faith, and in the event that either of his " nieces " decide to adopt such faith, provides as follows: " That the bequest to them hereunder shall fall and be forfeited, this condition being imposed by reason of Religious influences brought to bear upon said children by their Aunt.   *   *   *"

Then come legacies to persons and corporations, not material to this controversy, after which he disposes of his residuary estate giving to each of his nieces, Ethel May Hauser and Vivian Helen Hauser, a one-third share thereof.   The 3d paragraph of his will is as follows:

" I hereby   *   *   *   appoint The Guaranty Trust Company and John T. E. Van Derveer   *   *   *   Executors of this my last will   *   *   *   and as Trustees where hereinbefore stated, it is my further desire that they qualify and act as Guardians for my said Nieces, Ethel May Hauser and Vivian Helen Hauser until such time as the principal of the Bequests hereunder to them is paid, when they shall have reached the age of 21 years,   *   *   *."

The first matter to be considered is the effect of the trust provision in paragraph " second." It is evident that the testator in the place where he created the trusts, has not specifically provided for the payments of income, has not fixed the time when such trusts shall end and has not stated what disposition shall be made of the principals of the trust funds upon their terminations.

From the evidence it is clear that there was a deep feeling of affection existing between the decedent and the two nieces men-

Surrogate's Court, Bronx County, November, 1923.       [Vol. 121

tioned. Their father was related to the decedent, had worked for him for many years before his death, and he and his wife were so highly esteemed by the decedent that in his will he provided that he and they should be buried in his cemetery plot and that a monument should be erected upon which their three names were to appear. When the parents of the children died, the decedent took charge and care of them until he also passed on.

The trusts were stated by him to be " for " the nieces mentioned and we must assume that he intended that they should benefit therefrom and not that he was recording empty phrases in this important and solemn document. He has not mentioned such income in any other part of the will and hence it would follow that unless he wished the children for whose benefit the trusts are established to receive it, he must have intended that it pass under the residuary clause or that he die intestate as to the same. Neither of said conclusions is warranted; certainly not the latter for the testator must be presumed to have intended to dispose of his entire estate (*Hadcox* v. *Cody*, 213 N. Y. 570; *Meeks* v. *Meeks*, 161 id. 66; *Lamb* v. *Lamb*, 131 id. 227; *Vernon* v. *Vernon*, 53 id. 351; *Williams* v. *Petit*, 138 App. Div. 394), and an intestacy should, if possible, be avoided. *Ossman* v. *Von Roemer*, 221 N. Y. 381, 387; *Haug* v. *Schumacher*, 166 id. 506; *Kalish* v. *Kalish*, Id. 368, 375.

I am satisfied that they were to enjoy the income which was derived from the investment of the principal of the respective trust funds.

When the trusts end and what disposition is made of the principal of the trust funds, are matters next requiring consideration.

A well-established and reasonable rule of construction requires that in arriving at the intent of the testator, which is always the object to be sought and given effect to (*Matter of Buechner*, 226 N. Y. 440; *Camann* v. *Bailey*, 210 id. 19; *Phillips* v. *Davies*, 92 id. 199), not isolated words or phrases are to be considered, but the whole will must be looked into, and if possible, all of its parts harmonized and given effect. *Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339; *Howland* v. *Clendenin*, 134 id. 305; *Roe* v. *Vingut*, 117 id. 204; cases cited in *Matter of Columbia Trust Co.*, 97 Misc. Rep. 566, 571.

If this is done, as to this will, I believe the testator's intent will be evident, for in the 3d paragraph of his will, above quoted, he provides that the corporation and person mentioned " shall be the guardians of the two nieces *until such time as the principal of the bequests hereunder to them, is paid, when they shall reach the age of 21 years* " (Italics are mine). I deem it reasonable to assume that

by the words "bequests * * * to them" he intended also those in trust "for" them. There are no bequests in the 3d paragraph of the will; hence the testator by the word "hereunder" must have meant under his will, and that would include the bequests in trust as aforesaid.

I accordingly determine that the infants are entitled to have applied to their use, as hereinafter stated, the income from the trust funds of $10,000 created for them until they reach the age of twenty-one years when the trust shall end and the principals are to be paid to them unless they are divested thereof by reason of the attempted condition hereinafter discussed.

The condition attempted to be annexed to the legacies for the benefit of the infants stated is either a condition precedent or subsequent.

"Conditions precedent are such as must happen or be performed before the estate can vest. Conditions subsequent are such as, when they happen or are performed, or are not performed, as the case may be, divest, curtail, or abridge an estate already vested." *Winthrop* v. *McKim*, 51 How. Pr. 323, 327; affd., 66 N. Y. 625.

No specific words are necessary to create a condition precedent or to make a condition subsequent, but the words "shall fail and be forfeited" are significant. *Booth* v. *Baptist Church*, 126 N. Y. 215, 242. It is always a question of intent to be gathered from the will. *Nicoll* v. *N. Y. & Erie R. R. Co.*, 12 N. Y. 121, 130.

In *Finlay* v. *King's Lessee*, 3 Pet. 346, 374, the court said: "If the language of the particular clause, or of the whole will, shows that the act on which the estate depends, must be performed before the estate can vest, the condition is, of course, precedent; and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, and this is to be collected from the whole will, the condition is subsequent." See, also, *Underhill* v. *Saratoga & Washington Railroad Co.*, 20 Barb. 455; *Martin* v. *Ballou*, 13 id. 119; *O'Brien* v. *Barkley*, 28 N. Y. Supp. 1049.

In the last case the condition was that the legatee should not at any time, after the testator's decease, associate, etc., with a certain person, and the court said (at p. 1053): "The bare reading of the condition shows the intent of the testator to have been that his daughter should be divested of the estate here provided for her by some act of the legatee 'after' his decease, and not that she was to do some required thing before she could receive any of the rents and profits of his estate."

Such is also the situation with reference to the condition now under consideration.

It will be observed that the attempted condition is one which does not provide for an affirmative act on the part of the infants before they can enjoy the provisions mentioned, but that the same " shall fail and be forfeited " if either of them decides to adopt a certain faith.   No time limit is set.   Hence it follows that their decision might not be arrived at until just before their respective deaths, and if the condition were precedent, and the legacies did not vest until all possibility of its breach had passed, they would not vest during the lives of the infants.   *Matter of Hart*, 70 N. Y. Supp. 933.   To impute such an intention to the testator would, in the light of the relations existing between him and the beneficiaries in question, and of his whole will, be absurd.   This decedent certainly never intended that these infants upon whom he lavished his care and affection during life, should not enjoy the provisions which he so carefully made for their benefit.   The law favors the vesting of estates in the absence of a clear intent to the contrary. *Hersee* v. *Simpson*, 154 N. Y. 496; *Haug* v. *Schumacher*, *supra*.

As a general rule, a condition subsequent is created where a condition is annexed to the present gift requiring continuous action (*Field* v. *Drew Theological Seminary*, 41 Fed. Rep. 371; *Davis* v. *Hancock*, 95 Minn. 340; *Congregational Church of Chester* v. *Cutter*, 76 Vt. 338), and the condition here attempted to be attached to the legacies is one which in effect requires them to continue to refrain from adopting the religious faith referred to.

I accordingly hold that the attempted condition in question is a condition subsequent, that the infants are vested with the respective legacies subject to the trust as to the $10,000 amounts and, for the reasons hereinafter stated, to a power in trust as to the residuary, and subject to being divested by a breach of the condition referred to if it be held that the same is valid and enforcible.

The language of the 3d paragraph of the will hereinbefore quoted shows that the decedent made an attempt to appoint testamentary guardians of the infants mentioned, and that as to the one-third share of the residue to which each is entitled, such testamentary guardians were to hold the same until such time as the principal was paid to them when they should reach the age of twenty-one years.   I have already ruled adversely to his right to nominate guardians for such infants by his will.   *Matter of Hauser*, 189 N. Y. Supp. 51, 53, citing Dom. Rel. Law (Cons. Laws, chap. 14), § 81; *Fullerton* v. *Jackson*, 5 Johns. Ch. 278; *Matter of Scoville*, 72 Misc. Rep. 310; *Matter of Lichtenstadter*, 5 Dem. 214.

While, however, the attempted appointment of the testamentary guardians was ineffective as such, the intent of the testator may be carried out by holding that they have a power in trust, and under

such power have the same authority with respect to the property of the infants as they would have had if the appointments as testamentary guardian had been effective, and I so determine. The language of the 3d paragraph of the will, while not in terms giving one-third of the residuary estate to the guardians of each infant, nevertheless shows a clear intent that such property was to be in the custody and control of the testamentary guardians there attempted to be nominated until the infants reach their respective majorities, and hence the corporation and person nominated as guardians have a power in trust with reference to the same. *Matter of Bouman,* 113 Misc. Rep. 630, 632, citing *Matter of Kellogg,* 187 N. Y. 355; *Matter of Berndt,* 102 Misc. Rep. 646; *Matter of Wohlers,* 98 id. 500.

The infants are entitled to have applied to their support, maintenance and education so much of the income from the trust funds of $10,000, and from their interests in the residuary estate and from the principal of the latter, as may be necessary, until they reach the ages of twenty-one years, respectively, when the principals are to be paid to them unless they are divested by a breach of the condition heretofore referred to, if the same be held to be valid.

The question is also presented whether or not the condition above referred to by which the testator attempted to limit the bequests to his nieces is valid and enforcible. The petitioner and other interested parties claim that it is, whereas on behalf of the infants it is contended that it is against public policy and also that it is void because there is no gift over provided for in case of a breach.

Upon the hearing it was stated that Bertha Louise Hauser, now Bertha Louise Bertchold, had adopted the religious faith in question, but no proof of that fact was offered, and it was stipulated that an objection made to the payment of the legacy of $500 to her be withdrawn, and that the executor pay to her guardian such sum of $500 with the understanding that the withdrawal of the objection and the payment of the legacy were not to be understood as being a consent to a construction of the will to the effect that she was entitled to the same, and was not to establish a precedent as to the other infants. There is no evidence before me upon which I would be warranted in finding that the condition has not been lived up to by her. Hence, it is not necessary at this time to adjudicate the question as to whether or not the same is valid and applicable to the bequest to her. Nor does it appear necessary or even advisable to pass upon its validity as it may affect the other two beneficiaries. They are young children. There is no claim that they have adopted the religious belief in question or that there is any immediate probability that they will do so or intend to do so. It

is quite possible that the question may never be other than an academic one or that it may not become necessary to determine it until one or both of these infants are of full age and can guard their own rights. The general rule is not to construe a will under such circumstances. *Matter of Farmers' Loan & Trust Co.*, 226 N. Y. 691; *Matter of Mount*, 185 id. 162; *Matter of Smith*, 96 Misc. Rep. 414, 417, 418; *Matter of Bankers' Trust Co.*, 82 id. 375; *Davis* v. *Davis*, 86 App. Div. 401.

For the same reasons, it is unnecessary and inadvisable at this time to decide whether the condition relates only to the $10,000 trust funds or also to the infants' interest in the residue. I shall, therefore, make no determination as to any of these matters, without prejudice, however, to a further application if and when it becomes necessary to determine the same.

The power of sale over the real estate given to the executors, the survivor of them or the one who shall qualify, seems clear, and as the business of the decedent has been incorporated, it does not appear that a construction is necessary with reference to the clause of the will referring to the same, as distribution of the various interests may be made. So far as the interests of the infants therein are concerned, those having the same in their custody and control are charged with the same duty with respect to them as they are with reference to other property of the infants, and should use their best endeavors and efforts to see that no loss is sustained by them.

Costs to be taxed are awarded to each party who has appeared and an allowance is granted to the special guardian, payable out of the estate. Settle decision and decree accordingly.

Decreed accordingly.