In the Matter of the Estate of WILLIAM TRIMBEY, Deceased.

Surrogate's Court, Oneida County, April 4, 1934.

*Dunmore, Ferris & Burgess* [*Mr. Hughes* of counsel], for the First Citizens Bank and Trust Company.

*Pratt & Fowler* [*L. G. Fowler* of counsel], for the executors.

*Paul J. McNamara*, special guardian.

EVANS, S. This is a final accounting by First Citizens Bank and Trust Company of Utica, as trustee under the " twenty-sixth " paragraph of the last will and testament of the above-named testator.

The issue here pertains to certain investments made by the trustee to which certain interested parties have filed objections. These cover two main points.

1. That the investments were not permitted by the will.

2. That they were not legal, reasonable or prudent. That portion of the will under consideration now reads as follows:

" *Twenty-sixth*. I hereby authorize, empower and direct my executors hereinafter named to sell and convert into cash within

one year from the date of my death, all real and personal property, of which I may die seized and possessed, except my Hotel Street Property, and the same shall be deposited by my said executors with the Oneida County Trust Company, of Utica, N. Y., as Trustee; and I hereby authorize, empower and direct the said Oneida County Trust Co., as such Trustee, to pay over the income from the amount so deposited to my daughter, Gertrude Trimbey Briggs, quarterly.

" In case my said executors shall not be able to realize a sufficient amount to pay the bequest of ten thousand dollars to my said wife, Ruth Richards Trimbey, and to create a trust fund of at least thirty thousand dollars, no other bequest herein specified shall be paid until after the death of my said daughter.

" Upon the death of my said daughter, said trust fund shall terminate, and the trustee thereof shall forthwith pay over the amount then on deposit with increase to my executors hereinafter named."

By way of explanation, the Oneida County Trust Company of Utica, N. Y., was superseded through merger by First Citizens Bank and Trust Company of Utica as trustee. The testator was a resident of the city of Utica and the head of a well-known corporation engaged in the wholesale grocery business. His will was executed on February 11, 1921, and the testator died on November 9, 1921. He was survived by his second wife, Ruth Richards Trimbey, and Gertrude Trimbey Briggs, a daughter by his first marriage.

There is evidence that it was the studied and settled purpose on the part of the testator to provide for the welfare of his daughter to the exclusion of all other considerations. He was the head of what was and now is a successful business. His stock in the corporation represented the bulk of his property. There is ample proof to support the inference that Mr. Trimbey entertained faith and confidence in his business associates. They are the executors of his will and also legatees. A less conservative man might well have directed his executors and trustee to retain his stock in the business and to apply the dividends for the benefit of Gertrude. However, the testator adopted the rule of caution. He appears to have possessed a fear in risking the future of his daughter to the possible perils of investments.

With the exception of the store property, he directed that all real and personal property be converted into cash within one year from his death. This appears to disclose an intent to preserve safety with a modest return rather than larger returns coupled with hazards. If this conclusion is a correct analysis of the mental

attitude of the testator as a background, we come to the concrete task of finding his meaning.

The executors following instructions in the will reduced the assets to cash and deposited with Oneida County Trust Company, as trustee, the sum of $22,500 on December 20, 1922, and later on January 7, 1924, deposited an additional amount of $1,134.37, making a total of $23,634.37.

The daughter, Gertrude, died some months ago and the trustee duly filed its account. It shows among other things an investment of $20,000 in two mortgage participation certificates, one amounting to $11,800 covering the so-called Small property, and the other for $8,200, covering property on Walker street, both located in the city of Utica. This investment now does and has paid an annual interest of six per cent.

The executors who are also legatees decline to accept the participation certificates, declaring them to be frozen assets, and insist on the payment of cash as a matter of right under the terms of the will. It is apparent that the trustee assumed to be clothed with the normal powers and functions of a trustee without restrictions as to investments excepting those imposed by statute. In any event Gertrude received an annual income until her death of six per cent based on the amount of this investment. This income was approximately twice what it would have been at the usual bank interest. This gratifying result, however, cannot cloud or confuse the real issue. The contestants point out that the duty of the trustee is clearly stated in the will. They insist that the testator directed that the principal of the trust fund be deposited and the income therefrom be paid over to the daughter. The word " deposited " appears twice and the word " deposit " once. There is no direction to invest or reinvest. These words are conspicuous by their absence.

Upon the death of the daughter, the trustee was directed to pay over the amount then on " deposit." This fact indicates that the testator contemplated that his cash would be on deposit after the death of his daughter. There is no reference to bonds, mortgages or stocks to give a dubious meaning to the language employed. Counsel for the trustee contends that certain words used spell out an intent to permit investments and not a mere deposit. It is argued that a distinction exists between a deposit *in* a bank and a deposit *with* a bank. That the preposition *in* is ordinarily used to describe the act of deposit and that the preposition *with* has a broader meaning. That the word " income " denotes a return from investments and is not used to designate the sum paid for the use of money commonly called interest.

Attention is also directed to the provision providing for the payment of income quarterly instead of semi-annually according to the practice of this particular bank. It is claimed that the word " increase " at the end of the paragraph is significant and harmonious with the theory that the cash was intended by the testator to be invested and become more valuable. That a bank account has no increase but remains static except as interest is added to it. It is perhaps true that greater precision in the choice of words might improve the instrument from a literary view but the meaning to me is unmistakable. I think that a court is not warranted in seeking out fine shades and blends of meaning for words commonly used.

" Where a * * * testator clearly discloses the sense in which he intended the words he has used should be understood, the courts construe them in no other sense, although such use be * * * inaccurate according to the dictionary." (*Farmers' Loan & Trust Co.* v. *Callan*, 246 N. Y. 481.)

" The context of the entire instrument and the intent gathered must not yield to any refinement of language in arriving at a proper translation." (*Boucicault* v. *Lenpuscher*, 124 Misc. 232.)

In the final analysis interest received at a bank becomes income as well as dividends on stock. Some banks pay interest quarterly and others semi-annually. Broadly speaking the interest added to a bank account increases it accordingly. The word " deposit " has been defined " to place for safe-keeping." This is precisely what the testator apparently desired with the trust fund for Gertrude. He possessed the power to regulate and direct how his money should be handled by the trustee. (*Matter of Reid*, 170 App. Div. 631; *Matter of Columbia Trust Co.*, 97 Misc. 566.)

I think that the will directs and the testator intended that this trust fund should remain on deposit in the bank and the interest paid to Gertrude during her lifetime and thereafter the principal should be paid to the executors.

The investment by the trustee was contrary to the terms of the will and outside the scope of its authority.

It is, therefore, unnecessary to decide the issues raised by the second objection.

Decreed accordingly.