executed a bill of sale transferring "the aforesaid business and assets to her husband." These two findings, if true, show that she did not, at that time, own the property which was transferred. The conclusion of law, therefore, that the transfer of the goods in No. 1315 Boston road to the husband was fraudulent and void is not sustained by the findings of fact. But if it be assumed that the findings of fact were an inadvertence, and the same might be corrected on appeal, nevertheless the same cannot be here corrected, because the evidence would not justify a finding that the transfer was made with intent to hinder, delay, and defraud the creditors of Mrs. Baumryter, or that it was fraudulent and void as to them.

Upon each of the grounds stated, the judgment appealed from is reversed, and the findings of fact Nos. X, XIII, XVI, and XVII, and the conclusions of law based thereon, are reversed, and the complaint dismissed, with costs. All concur.

In re REID et al.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. TRUSTS ☞172—ESTABLISHMENT—AUTHORITY OF CREATOR OF TRUSTS.

A testator or the creator of a trust has unlimited authority to direct how his money is to be invested by the trustees, or he may leave the manner of investment completely in the discretion of the trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 227; Dec. Dig. ☞172.]

2. TRUSTS ☞222—TRUSTEES—ACTS OF.

A testator, who was a member of a firm, withdrew, executing a trust deed to his partners, whereby he conveyed to them all of his interest in the firm, to be held in trust during his life, the income to be paid to him. The deed further provided that the trustees might in their discretion permit the whole or any part of the estate to remain in the business for such period of time as they should think proper, and might continue the loan so long as R. or F. should be a member of the firm. By his will the testator appointed R. and F. and another executors and trustees, and devised and bequeathed to them his property, directing that the provisions of the will should be subject to any and all rights which his partners, or either of them, might have under any partnership or other agreement, and declaring that the executors should have unlimited discretion in investments. The will further particularly authorized the executors to lend money to the firm of which the testator had been a member without other security, so long as R. or F., or either of them, should be members. *Held*, that the executors had an absolute discretion to lend the funds of the estate to the firm of which they were members; it having been continued in existence after the death of F. by the addition of another partner.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 319; Dec. Dig. ☞222.]

3. TRUSTS ☞222—TRUSTEES—ABUSE OF DISCRETION.

In such case, as the firm appeared solvent, although its profits fluctuated from year to year, the lending of the money to the firm upon its unsecured note was not an abuse of discretion by the trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 319; Dec. Dig. ☞222.]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the accounts of Thomas C. Reid and William H. Lotty as trustees of the estate of William H. Lent, deceased. From a decree of the surrogate, settling the intermediate accounts and disallowing an investment made by the trustees, and charging them with the amount of such investment as cash on hand, an appeal was taken. Reversed and modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

George W. Wickersham, of New York City, for appellants.

Henry D. Patton, of New York City, for respondent.

SCOTT, J. For many years prior to December 1, 1901, William H. Lent was the principal partner in the firm of William H. Lent & Co.; his partners at the date mentioned being Thomas C. Reid and George W. Finn. On December 2, 1901, Mr. Lent, having decided to retire from business, executed a trust deed to said Thomas C. Reid and George W. Finn, whereby he conveyed to them as trustees:

"All his right, title, and interest in and to any share in the capital of the firm of William H. Lent & Co., of which he is a member, which may be due him or may be credited to him on the books of said firm on the first day of February, 1902."

The trust deed provided that the net income derived from said trust property should be paid to the grantor during his lifetime, and made alternative provision for its disposition after his death. The deed contained the following clause:

"And said trustees are hereby authorized in their discretion to permit the whole or any part of said estate, now invested in the partnership business of W. H. Lent & Co., to remain in the said business, as a loan, for such period as they may think proper, and from time to time to renew or continue such loan to the said firm of W. H. Lent & Co., so long as the said Reid or the said Finn shall be a member of such firm, such loan to bear interest at the legal rate and to be secured by the personal bond or other obligation of the said Reid and Finn and of the other person or persons (if any) comprising said firm, to whom the loan shall be made, and said trustees shall not be in any wise responsible for any loss thereby occasioned, unless by the gross negligence of said trustees, beyond the liability on such bond or obligation."

On the same day he executed a will in which he appointed the aforesaid Thomas C. Reid and George W. Finn and one William H. Lotty as executors and trustees. He gave his residuary estate to his executors in trust during the lifetime of two sons, and provided for the distribution of the estate at the expiration of the life estate. The eighth and ninth clauses of his will read as follows:

"Eighth. All the provisions in this will contained shall be subject to any and all rights which my partners, Thomas C. Reid and George W. Finn, or either of them, may have under any partnership or other agreement in force at the time of my death, which I hereby direct shall in all respects be carried out.

"Ninth. I hereby appoint my partners, Thomas C. Reid and George W. Finn, and my friend William H. Lotty executors and trustees of this my will, without bonds, and I hereby give to my said executors and trustees full and unlimited authority to invest the funds of my estate not only in such securities as are allowed by law, but in any way that may seem to them for the best

interest of the estate, giving to them, or to the majority of them, unlimited discretion as to such investment or investments and freeing them from all liability, except for gross negligence, in regard thereto. And I do hereby particularly authorize them to loan any portion of my estate to the firm of William H. Lent & Co., without other security than the note or notes of said firm, so long as the said Reid or the said Finn or either of them may be members of said firm. And as to all matters relating to the said estate or its administration upon which my said executors and trustees may need legal advice I desire that they all advise and confer with my friend Francis Forbes of the firm of Forbes & Haviland."

An accounting was had as of February 1, 1902, upon which it was ascertained that Mr. Lent's capital share or interest in the firm was $114,342.22; the shares or interests of Reid and Finn being much smaller. The firm of W. H. Lent & Co. had been continued under the same firm name of Thomas C. Reid and George W. Finn, as copartners, and that firm executed promissory notes to Thomas C. Reid and George W. Finn as trustees for the full amount of Mr. Lent's interest in the capital of the firm, as shown by the aforesaid accounting. The due dates of these notes extended over a number of years; the longest to run coming due in 1922, or 20 years from the date thereof. Lent died on July 2, 1902. Both of the sons, upon whose lives the trust estate was limited by the will, are still living. The objections to the account which raise the question to be considered upon this appeal were filed by an expectant remainderman.

It appears that prior to May, 1905, notes to the amount of $13,-209.57 have been paid, and the proceeds used to pay legacies and in the administration of the estate. The present controversy arises over a series of notes which came due in 1909 to 1914, inclusive, and which, as they came due, were canceled, and new notes executed; each coming due 14 years from date. The Surrogate's Court, by the decree appealed from, has disapproved the renewal of these notes, and has charged the executors and trustees with the amount thereof, upwards of $35,000, as cash in hand.

The firm of William H. Lent & Co., composed of Thomas C. Reid and George W. Finn, was dissolved by the death of Finn in 1906, and a new firm under the same firm name was organized by said Reid and one Anson L. Hutton. This firm still exists, and is the firm which executed the notes disallowed by the Surrogate's Court. It was originally formed to run until January, 1911, and has been extended to December 31, 1915. The articles of copartnership provide that:

"The special capital of the Wm. H. Lent trust, of which Thomas C. Reid is trustee,  *  *  *  shall be payable within a reasonable time after the death of said Thomas C. Reid to the parties entitled to the said trust fund, or to a successor in trust of the said Thomas C. Reid, as provided in the last will and testament of William H. Lent, deceased."

The firm of Wm. H. Lent & Co. is a going concern, undoubtedly solvent, and apparently prosperous, although naturally its profits fluctuate from year to year.

[1] It is fundamental law that a testator or the creator of a trust has unlimited authority to direct how his money may be invested by his trustees, or may leave the manner of such investment completely

in the discretion of such trustees. Denike v. Harris, 84 N. Y. 89; In re Crowthers [1895] 2 Chanc. Div. 56; In re Millicamp, 52 L. T. 758–760. In such a case, if an investment be challenged, the only questions are, first, did the trustees act within the limits of their discretion? and, second, was their discretion abused?

[2] That the trustees, in the principal case, acted within the discretion given them by the will, seems to us to be indisputable. The language of the will, in so far as it defines the discretion given to the trustees as to their investments, is too plain to call for construction. Not only are they to invest the funds of the estate "in any way that may seem to them to be the best interest of the estate, giving to them or to the majority of them *unlimited* discretion as to such investment or investments, freeing them from all liability, except for gross negligence in regard thereto," but they are particularly authorized "to loan any portion of my estate to the firm of William H. Lent & Co., without other security than the notes of said firm so long as the said Reid or the said Finn, or either of them may be members of said firm."

The trustees have proceeded in precise conformity with the authority, so precisely expressed as to amount to a strong indication of the testator's wishes and expectations. Reid still remains a member of the firm, and was such when the notes in controversy were executed. The very condition therefore existed which the testator fixed as that upon which the funds of the estate might be invested in loans to the firm, and the provisions quoted from the copartnership agreement between Reid and Hutton insure that, whatever may be the nominal due dates of the notes, the whole amount thereof will become due and payable to whomsoever may be entitled to receive it, when the condition upon which the funds of the estate might be loaned to the firm shall cease to exist by reason of the death of Reid. It is so clear that the renewal of the notes in controversy was within the strict letter of the will that we find no room for further discussion of the question.

[3] Nor can it be said, with any degree of reason, that the condition of the firm is such that the continuance of the loans to it was an abuse of the discretion vested in the trustees. The evidence as to the nature, extent, and present condition of the business makes that perfectly clear. Our conclusion, therefore, is that the trustees acted well within the discretion vested in them by the will in renewing the notes disapproved and disallowed by the Surrogate's Court.

The result is that the decree, in so far as appealed from, must be reversed, with costs to the appellants payable out of the estate, and the decree modified as hereinbefore indicated. Settle order on notice. All concur.