In the Matter of the Petition of LEWIS N. CRANE and Others for a Construction of the Will of IDA C. POTTS, Deceased.

STEPHEN F. AVERY, as Executor, etc., of IDA C. POTTS, Deceased, Appellant, Respondent; LEWIS N. CRANE and Others, Heirs at Law and Next of Kin of IDA C. POTTS, Deceased, Respondents, Appellants.

Third Department, May 2, 1923.

Wills — charitable trusts — gift in trust to executors to hold principal and all accumulations with directions to organize charitable corporation as soon as possible and then to turn over principal and accumulations to trustees thereof for designated charitable uses — gift is valid under Personal Property Law, § 12, and Real Property Law, § 113, and does not violate law against perpetuities — provision as to accumulations unnecessary — gift of principal carries income.

A bequest of personal property to executors to hold the same and all accumulations with directions to organize and create, as soon as it can be done in accordance with law, a corporation the purpose and object of which shall be to construct, maintain and operate a hospital for the care and treatment of patients afflicted with tuberculosis is a valid, charitable gift under section 12 of the Personal Property Law and section 113 of the Real Property Law, and does not violate the law against perpetuities though the period of possession of the property by the executors may extend for more than two lives in being, since the gift

was immediate for charitable uses and was not preceded by any gift for the benefit of individuals.

The provision that the executors should hold all accumulations accruing prior to the organization of the corporation was unnecessary since the gift of the principal to the corporation was immediate, and being immediate as to principal, was immediate as to income, and, therefore, the provision as to accumulations does not affect the validity of the gift.

CROSS-APPEALS by Stephen F. Avery, as executor, etc., and by Lewis N. Crane and others, heirs at law, etc., from a decree of the Surrogate's Court of the county of Columbia, entered in the office of said Surrogate's Court on the 9th day of November, 1922, construing the 26th paragraph of the will of Ida C. Potts, deceased.

*Carl Sherman, Attorney-General.*

*Chace Brothers* and *R. Monell Herzberg,* for the executor, appellant.

*McCurn & McDonald [Francis D. McCurn* of counsel], *John L. Crandell* and *Robert G. Patrie,* for the petitioners, appellants.

H. T. KELLOGG, Acting P. J.:

These are cross-appeals which call for the review of a decree of the Surrogate's Court of the county of Columbia, construing the 26th paragraph of the last will and testament of Ida C. Potts, a resident of Columbia county, who died on or about the 19th day of November, 1921, leaving personal property of the value of $1,729,773.96, and also certain real property.

The 26th clause of the will directs the executors to organize and create " as quickly as it can be done in accordance with the law," a corporation, the purposes and objects of which shall be " to construct, maintain and operate a hospital for the care and treatment of patients afflicted with tuberculosis." The clause then gives the residuary estate to the executors in trust to receive and hold " all of said property with all accumulations thereof " until such corporation be organized. It directs the executors to purchase land in Columbia county, N. Y., for the erection of hospital buildings. It provides that for the purchase of a site and the erection and equipment of buildings not more than $150,000 of the fund bequeathed shall be spent. It then directs that all of the residuary estate, over and above the sum of $150,000, be given to the trustees of the corporation to be organized and to their successors in perpetuity and provides that such sum shall constitute an endowment fund, the income from which shall be used for the maintenance and operation of the hospital. It is apparent that the gift sets up a trust for the benefit of an indefinite and uncertain class; that the trust duties imposed upon the executors might

require them to hold the subject of the gift for a period greater than two lives; that the devise over to the corporation directed to be organized might suspend the power of alienation for a period not measured by lives. Had the purpose of the gift been other than charitable, it is self-evident that the gift would have been invalid. The question arising, therefore, is whether the gift is saved by its charitable purpose.

In the leading case of *Williams* v. *Williams* (8 N. Y. 525) the testamentary disposition considered was a gift to individuals in perpetual trust for the education, at a certain village academy, of the children of the poor. Although the trust was created for the benefit of an indefinite class and was not limited by lives in being, nevertheless the gift was upheld. The court, per DENIO, J., said: "The result of my examination of the case is, that the law of charitable uses as it existed in England at the time of the Revolution, and the jurisdiction of the Court of Chancery over these subjects, became the law of this State on the adoption of the Constitution of 1777; that the law has not been repealed, and that the existing courts of this State having equity jurisdiction are bound to administer that law." The court also said: "So far as my researches have gone, I have found no case or dictum, which would cast a doubt upon the validity of this bequest in the courts in England, at any time during the century preceding the nineteenth day of April, 1775. Having adopted the common law of England, so far as it was applicable to our circumstances, and conformable to our institutions, the law of charitable uses is in force here." The decision in the *Williams* case was expressly repudiated in *Bascom* v. *Albertson* (34 N. Y. 584); *Burrill* v. *Boardman* (43 id. 254) and *Holmes* v. *Mead* (52 id. 332). In those cases it was held that the English doctrine of charitable uses does not obtain in this State; that all testamentary gifts made for charitable purposes are subject to the rules in relation to indefiniteness and remoteness prevailing in the case of non-charitable gifts. The law so stood until the year 1893, when the Legislature enacted chapter 701 of the Laws of 1893, the provisions of which have since been made a part of the Personal Property Law (Pers. Prop. Law, § 12) and of the Real Property Law (§ 113). This act provided that no gift to religious, educational, charitable or benevolent uses should be deemed invalid by reason of the indefiniteness of the class of beneficiaries designated; that if the instrument creating the gift named a trustee to execute the same the title should vest in the trustee; that if it named no trustee the title should vest in the Supreme Court; that the Supreme Court should "have control over gifts, grants, bequests and devises in all cases provided for" in the act. The act contained no pro-

vision expressly relieving charitable trusts from the statutory rule forbidding perpetuities. Nevertheless it was held in the leading case of *Allen* v. *Stevens* (161 N. Y. 122) that charitable trusts created to endure for a period greater than two lives were thereby rendered valid. The court said: "Reading the statute in the light of the events to which reference has been made, it seems to me very clear that the Legislature intended to restore the law of charitable trusts as declared in the *Williams* case." This declaration, as well as the decision in the case, has been many times approved and never disaffirmed. (*Matter of Griffin*, 167 N. Y. 71; *Bowman* v. *Domestic & Foreign M. Society*, 182 id. 494; *Matter of Shattuck*, 193 id. 446; *Matter of Robinson*, 203 id. 380; *Matter of Cunningham*, 206 id. 601; *Matter of MacDowell*, 217 id. 454.) The question whether a charitable gift made to take effect after the lapse of a period not measured by lives creates an unlawful suspension was not decided in *Allen* v. *Stevens*, has not since been decided by the court which rendered that decision, and remains in this State an open question. The declaration in *Allen* v. *Stevens* that the act of 1893 worked a restoration of "the law of charitable trusts as declared in the *Williams* case" is, therefore, important. The law so declared was the English law of charitable uses. In order to determine the unanswered question we must, therefore, largely have resort to cases in other jurisdictions where that law has at all times prevailed.

The law of charitable uses does not protect a gift for a charitable purpose, made to take effect after a gift to an individual, upon a condition not necessarily to be fulfilled within the period prescribed by the rule against perpetuities. (*Attorney-General* v. *Gill*, 2 P. Wms. 369; *Johnson's Trusts*, L. R. 2 Eq. 716; *Merritt* v. *Bucknam*, 77 Maine, 253; *Merrill* v. *American Baptist Missionary Union*, 73 N. H. 414; Perry Trusts [6th ed.], § 736.) The rule is explained in *Odell* v. *Odell* (10 Allen, 1, 7), as follows: "And if a gift is made in the first instance to an individual, and then over, upon a contingency which may not happen within the prescribed limit, to a charity the gift to the charity is void, not because the charity could not take at the remote period, but because it tends to create a perpetuity in the individual who is the first taker, by making the estate inalienable by him beyond the period allowed by law." This is the principle underlying *Leonard* v. *Burr* (18 N. Y. 96). In that case a testator devised to an individual the use of a certain parcel of land "until Gloversville shall be incorporated as a village, and then to the trustees of said village, to be by them disposed of for the purpose of establishing a village library." It was therein said by Judge DENIO: "By the terms of this devise the property,

during the whole indefinite period of the suspension of the power of alienation, is devoted to a private use. The charitable gift might not take effect until some very remote period, or it might not take effect at all, though there might remain a possibility that it would arise and thus the estate would remain inalienable for an indefinite period, without the devotion of any of its income to the purposes of charity. It follows from this that there is nothing to take the case out of the statute."

On the other hand, if there be a gift to one charity with a gift over to another charity upon the happening of an uncertain and remote contingency, the law of charitable uses saves the gift. This was long ago determined in the case of *Christ's Hospital* v. *Grainger* (16 Sim. 83). There the testator gave certain property to the Corporation of Reading for a charitable use, provided, however, that if the donees should fail for a year to perform certain acts, the gift should forthwith pass to the Corporation of London for the benefit of Christ's Hospital. It was held that the gift over was good. *Christ's Hospital* v. *Grainger* was affirmed (1 Mac. & G. 460, 464) where Lord COTTENHAM said: " It was then argued that it was void, as contrary to the rules against perpetuities. These rules are to prevent, in the cases to which they apply, property from being alienable beyond certain periods. Is this effect produced, and are these rules invaded by the transfer, in a certain event, of property from one charity to another? If the Corporation of Reading might hold the property for certain charities in Reading, why may not the Corporation of London hold it for the charity of Christ's Hospital in London? The property is neither more nor less alienable on that account." In Halsbury's Laws of England it is said: " Nor has the rule against perpetuities any application to a gift over in a certain event of property from charity A to charity B, even where the event is the non-repair by charity A of the testator's tomb. But this principle does not extend to cases where an immediate gift in favour of private individuals is followed by an executory gift in favour of charity." (Vol. 4, p. 175.)

A gift to a charity not preceded by a gift to an individual is generally held to be valid, although a period greater than prescribed by the rule against perpetuities may elapse before the taker is empowered to receive the gift. In *Attorney-General* v. *Bishop of Chester* (1 Bro. C. C. 444), decided in the year 1785, the testator made a gift to trustees for the purpose of establishing a bishop in His Majesty's dominions in America. MANSFIELD, for the defendant, contended that there being no bishop in America, or the least likelihood of there ever being one, the gift was void. Lord Chancellor THURLOW held that the gift was good and that the money must

remain in court until it might be seen whether any such appointment would take place. In *Attorney-General* v. *Bowyer* (3 Ves. Jr. 714), a case decided in the year 1798, there was a devise to trustees in trust that they should, out of the rents and profits of certain premises, purchase lands in Cambridge for a college to be called Downing College, and build thereon such buildings as might be fit for that purpose. The testator directed the trustees to take steps to incorporate a body collegiate of that name within the University of Cambridge and directed that after its incorporation the trustees and their heirs should stand seized of the premises in trust for such collegiate body. It was held that the trust was valid and that the rents and profits as well as the corpus of the gift must be devoted to the uses of the college. Lord LOUGHBOROUGH said: "According to the will, the arguments of all the Judges, and the number of cases referred to, the right of the heir is totally gone." In *Sanderson* v. *White* (18 Pick. 336), Chief Justice SHAW said: "Where a gift is made with a view to found a hospital or college, not in being, and which requires a future act of incorporation, the gift is nevertheless valid, and the law will sustain it and carry it into effect." In Perry on Trusts (6th ed. § 736) it is said: "But a gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker." In *Ould* v. *Washington Hospital, etc.* (95 U. S. 303), there was a devise of real estate in trust to hold the same as a site for the erection of a hospital for foundlings to be built by any association which might thereafter be incorporated by an act of Congress as and for such hospital, and upon such incorporation to convey the premises to the institution so incorporated for the purpose of erecting such hospital. The devise was held to be valid.

An executory gift to a charity, without a precedent gift to private persons, upon the organization of a corporation to execute the charity, is held valid upon the theory that the general charitable purpose of the donor being immediate, a court of equity, having the power from the beginning to execute the charity in its own way, notwithstanding the fact that the donor's method may cause delay, will regard the gift as immediate, involving neither postponement nor suspension. This theory explains why a similar gift made to follow a gift to private persons is held to be invalid. In that case the existence of an intent to make an immediate gift is conclusively denied by the act of the donor in interposing a prior gift. The theory is explained by Professor Gray as follows: "If the Court, however, can see an intention to make an

unconditional gift to charity (and the Court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the Rule against Perpetuities. The mode pointed out by the testator is only one way, though the preferable way, of carrying out the charitable purpose; and if it cannot, with regard to the general charitable intention, be carried out in that way, it will be carried out *cy pres.* Thus while the Court will allow the fund to be transferred to a corporation not in existence at the time of the gift, if such corporation is constituted in a reasonable time, it will not recognize the right of such non-existent corporation to keep the fund locked up until such time as it may please itself to be incorporated. The formation of the corporation is not a condition precedent to the charitable trust, and therefore the trust is not too remote." (Gray Perpetuities [3d ed.], § 607.) That this is the theory of the English courts is shown by the following: " But the fact that the particular application of a charitable gift is indefinitely postponed does not render the gift void where the gift, as distinguished from the application of it, is immediate." (4 Halsbury's Laws of England, 175.) The power of a court of equity in this jurisdiction to carry out the general purpose of the donor of a charity in its own way is no longer the subject of doubt. In *Williams* v. *Williams* (*supra*) it was said, as already stated, that " the jurisdiction of the [English] Court of Chancery over these subjects, became the law of this State on the adoption of the Constitution of 1777," and that " the existing courts of this State having equity jurisdiction are bound to administer that law." It was the undoubted purpose of the Legislature to restore such jurisdiction when it enacted chapter 701 of the Laws of 1893, and therein provided: " The Supreme Court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act. The Attorney-General shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trusts by proper proceedings in the court." (*Bowman* v. *Domestic & Foreign M. Society, supra; Matter of Robinson, supra; Trustees of Sailors' Snug Harbor* v. *Carmody,* 211 N. Y. 286.) The theory of *immediateness* of general purpose, which in other jurisdictions sustains gifts to charities upon their subsequent incorporation, is, therefore, applicable to sustain them here.

That the purpose of the testatrix in this case to make a charitable gift to a corporation to be organized under the name of " The Potts Memorial Hospital " was immediate cannot be doubted. Not only did the testatrix direct her executors " to organize and create such a corporation as quickly as it can be done in accordance

with the law," but she further charged them as follows: " I charge and impress upon my executors as trustees the duty of acting expeditiously and with sound judgment and wise counsel in the creation of the institution which I desire shall receive for all time the benefits of the residuum of my estate to the end that care and relief may come to those who in its earliest stages or otherwise are threatened with tuberculosis." It is true that this gift was preceded by a gift to her executors to hold the subject of the gift until " The Potts Memorial Hospital " was organized as a corporation. This, however, did not render the subsequent gift invalid. The gift was not made for the benefit of private persons but rather in aid of the subsequent gift to charitable uses. Neither was the subsequent gift rendered invalid by the fact that the donees of the prior gift were directed to hold not only the property given but " all accumulations thereof " until such time as the corporation might be organized. In the estimation of a court of equity the gift of the residuary estate to the corporation was immediate, and being immediate as to principal was immediate as to income. The provision made in relation to accumulations was, therefore, wholly unnecessary and may be disregarded. The gift in question finds an exact parallel in *Attorney-General* v. *Bowyer* (*supra*) wherein a gift to a certain college yet to be incorporated was preceded by a gift to trustees to hold the premises given and to transfer the same with accumulated rents and profits to the college when incorporated. It is supported, as an immediate gift of both principal and income, by many decisions in other jurisdictions. (*Ould* v. *Washington Hospital, etc., supra; Jones* v. *Habersham,* 107 U. S. 174; *Brigham* v. *Peter Bent Brigham Hospital,* 126 Fed. Rep. 196; *Odell* v. *Odell, supra; Codman* v. *Brigham,* 187 Mass. 309; *Woodruff* v. *Marsh,* 63 Conn. 125.) The principle of these cases is stated to be as follows: " But where there is an unconditional gift to charity, the gift will be regarded as immediate and good, although the particular mode of carrying out the charity which the donor has indicated is too remote. Consequently in such a case if a direction for accumulation is invalid the only result is that the income is immediately distributable in charity; the heirs or next of kin are not let in." (Gray Perpetuities [3d ed.], § 678.) It seems to me that the theory of *immediateness,* the only theory upon which the principal gift to this charity, which was not required to be incorporated within two lives, can be sustained, is necessarily a theory which sustains a gift of the income; that either both gifts are valid or both gifts fail. Certainly if the principal gift was immediate all income thereupon as it accrued immediately became the property of the donee. For all the reasons given I think that we should

hold that the gift in all its parts was a valid testamentary disposition.

The decree of the Surrogate's Court should be modified, and as modified affirmed, with costs to each party who filed a brief, payable out of the estate.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Decree of the Surrogate's Court modified by striking therefrom the provision entitled "second," and by providing that all the provisions contained in paragraph 26 of the will are valid; and as so modified unanimously affirmed, with costs to each party who filed a brief, payable out of the estate.