CITY BANK FARMERS TRUST COMPANY, as Trustee, Plaintiff, *v.* MARTHA BENNETT and Others, Defendants.

Supreme Court, New York County, March 30, 1936.

*Mitchell, Taylor, Capron & Marsh,* for the plaintiff.

*John J. Bennett, Jr., Attorney-General.*

*Max M. Hirson, guardian ad litem,* for the defendant Stott.

*William H. Fain, guardian ad litem,* for the defendant Bennett.

HOFFMAN, Referee.    Plaintiff instituted this action for an account of its proceedings as trustee which it asked to be judicially settled and allowed; that the rights, shares and interests of the various defendants in and to the property in its hands as trustee, constituting the trust fund, be determined and defined; and that a decision also be made as to any and all questions which may be raised relating to said trust by any party hereto.    All the issues were referred to me as referee to hear and determine.

There has been no prior accounting which covers a period of over twelve years, namely, from May 31, 1922, the inception of the trust, to the accounting date of December 4; 1934. The account is a voluminous one, consisting of some 236 typewritten pages. The value of the trust at the time of its receipt was $1,353,085.12, and the trustee charges itself with a balance on hand of $1,158,075.62.

On May 31, 1922, Edith M. Schweckendieck, since deceased, executed a trust agreement which recited that as donor she had simultaneously transferred and paid over to plaintiff various assets and securities specified in the annexed schedule. The instrument also provided that the property thus or thereafter delivered should be held in trust to invest and reinvest the same, to collect and receive the issues and profits thereof, and apply the net amount to the use of the donor during her natural life, and upon her death to pay over the trust principal to her husband, if he should survive, but in the event of his death, at the time of the decease of the donor, to pay over the trust principal to the executors and administrators of her estate. The donor's husband predeceased her. The trust agreement further provided that the donor reserved to herself the right to amend the instrument from time to time, and as often as she deemed advisable. Pursuant to this power, the donor made several amendments in effect authorizing the trustee to invest the principal of the trust fund in designated stocks, and that any dividend received in stocks should constitute principal of the trust fund; that the word " securities " used in the agreement included common and preferred stocks. A prior amendment was revoked, and the trust agreement amended to provide that, upon the death of the donor, the trustee should pay to divers persons and institutions specific legacies. Finally, a further amendment provided — and this is recited in full, since it constitutes the gravamen of the principal objection urged:

" All the remainder of the principal of said trust fund (including all sums not otherwise effectively disposed of), the Trustee shall continue to hold in trust, nevertheless, for the following uses and purposes, that is to say:

" To hold, manage, invest, and reinvest the same in perpetuity, subject to all of the power, authority, and discretion by said Trust Agreement, and by said amendments of the 20th day of May, 1925, and the 27th day of June, 1933, conferred upon said Trustee, and to collect and receive the income therefrom, and from time to time to apply the net income therefrom as nearly as may be possible as follows:

" (a) One-third thereof to such charitable organization or organizations located in the State of New York and engaged either

entirely or partially in work for the prevention and relief of cancer, as said Trustee shall from time to time select.

" (b) Another one-third thereof to such charitable organization or organizations located in the State of New York and engaged either entirely or partially in work for the maintenance and care of the aged and feeble, as said Trustee shall from time to time select.

" (c) The remaining one-third thereof to such charitable organization or organizations located in the State of New York and engaged either entirely or partially in work for the maintenance, care, and education of crippled children, as said Trustee shall from time to time select.

" (d) If at any time after my death, either because a means of preventing or of curing cancer shall have been discovered, or for any other reason, said Trustee in its sole discretion shall determine that it is no longer necessary or advisable to apply any of the income of the perpetual trust fund hereinabove created, to the uses described in subdivision ' (a) ' above, then said Trustee shall thereafter apply the entire net income from said perpetual trust fund as follows:— One-half thereof to such charitable organization or organizations located in the State of New York and engaged either entirely or partially in work for the maintenance and care of the aged and feeble, as said Trustee shall from time to time select, and the other one-half thereof to such charitable organization or organizations located in the State of New York and engaged either entirely or partially in work for the maintenance, care, and education of crippled children, as said Trustee shall from time to time select."

The Attorney-General, pursuant to section 113 of the Real Property Law and section 12 of the Personal Property Law, has appeared herein, and joined in support of the argument that the charitable provisions of the trust are valid and should be sustained.

The *guardians ad litem* have filed twelve objections to the account. The principal point urged, however, is with respect to the validity of the trust. The provisions relating to the charitable trust are assailed as invalid on the ground that the corpus of the fund is diverted to private use, thus failing of its strictly charitable purpose and violating the law against perpetuities. If this contention is upheld, the trust so established would necessarily lapse, and the property would be administered as intestate property.

The questions of law have been ably briefed by counsel and materially aided in the rendition of this opinion.

Three distinct issues have been presented for consideration. These are: *First*, the right of the *guardian ad litem*, appointed by the court, to represent infants having a specific legacy and con-

tingent interest, to appear and urge objections to the account; *second,* the alleged invalidity of the trust agreement; and, *third,* criticisms of the administering of the trust investments and holdings by the trustee. Each will be discussed in the order named.

THE GUARDIANS' RIGHT TO APPEAR AND FILE OBJECTIONS.

The court appointed two separate *guardians ad litem* to protect the interests of its wards — infants entitled to a specific legacy and having a contingent interest dependent on a finding against the validity of the trust agreement. These officers of the court filed the usual answers, appeared before me and submitted objections to the account. At the outset the trustee argued that having set aside the specific legacy called for in the trust, the guardians were not concerned with the account, had no standing, and moved for the dismissal of their filed objections.

The conceded interest of the infants made them necessary parties to this action. They were, therefore, entitled to be represented and heard on any matter affecting the trust agreement and the account submitted by the trustee. Their guardians were within their rights in protecting their interests by filing objections in good faith, and this they are entitled to do regardless of the pecuniary value of such interest or its contingent nature. The courts have uniformly upheld this right. (*Matter of Webb,* 194 App. Div. 915; *Matter of Scheftel,* 150 Misc. 3; *Matter of St. John,* 104 App. Div. 460, 464.) In the last-cited case the Appellate Division of this department clearly indicated the established practice of the courts in the following significant language: " It is the settled policy of our courts to permit a person having or in good faith claiming to have an interest in the subject-matter of a judicial proceeding to appear in that proceeding with a view of having his contentions passed upon in the regular way; and for this reason the applicant should have been permitted to appear on the accounting." Nor could they be deprived of their rights to so appear and be heard by payment in cash of the specific legacy, since they also had a contingent interest, based on the outcome of their attack upon the validity of the trust agreement. Upon the facts before me, the status of the infant defendants entitled them to appear and be heard on their objections to the account and the validity of the trust. The motion to strike out and dismiss the objections filed by the guardians is, accordingly, denied.

VALIDITY OF THE CHARITABLE TRUST.

Briefly tracing the development of the law of charitable uses, we find it originally was borrowed from the civil law, becoming at a very early period a part of the common law, and, on the adoption

of the Constitution in 1777, of the law of this State. (*Williams* v. *Williams*, 8 N. Y. 525.) Thereafter, and in 1893, the Legislature enacted chapter 701 (§§ 1, 2) which declared that no grant or devise to a charitable use shall be held void for indefiniteness or uncertainty of the persons designated as beneficiaries, and gave the Supreme Court control over such grants. This, in effect, restored the law of charitable trusts as recognized in England prior to the Revolution. (*Trustees of Sailors' Snug Harbor in City of New York* v. *Carmody*, 211 N. Y. 286; *Ely* v. *Ely*, 163 App. Div. 320.) The Court of Chancery had no power to execute trusts for charitable uses where there was no trustee nor any designated *cestui que trust*. (*Owens* v. *Missionary Soc. of M. E. Church*, 14 N. Y. 380; 67 Am. Dec. 160.) In 1827, however, equity would not permit a charitable trust to fail for want of a trustee, but would appoint one. (*McCartee* v. *Orphan Asylum Soc.*, 9 Cow. 437; 18 Am. Dec. 516.) While on the death, resignation or inability of trustees created by will to act, the execution thereof devolves upon the Supreme Court. (*Matter of Merritt*, 124 Misc. 709.) In subsequent paragraphs the ruling cases construing similar charitable trust objects will be discussed at length.

A reading of the language of the trust agreement clearly shows that the donor sought to establish a perpetual trust the income from which was to be devoted to specifically designated charitable purposes. Their laudable objects speak for themselves, and it need only be mentioned that the donor directed that her property was to be divided in three parts, one, to charitable organizations engaged for the prevention and relief of cancer, second, organizations engaged entirely or partially in work for the maintenance and care of the aged and feeble, and, third, organizations engaged either entirely or partially in work for the maintenance, care and education of crippled children. It is manifest that the donor was actuated by a high public spirit in creating a fund designed to benefit humanity from the scourge of a deadly disease, and also aid in the care of the aged and feeble and the crippled children.

The residuary provisions of the trust instrument call clearly for the relief and comfort of persons afflicted with cancer, the care for the aged and feeble, and the maintenance and education of crippled children. The decisions abound with cases in which the identical trust purposes have been sustained. Thus, a trust for the prevention and relief of cancer was definitely established as a charitable trust in the *Matter of Judd* (242 App. Div. 389; affd., 270 N. Y. 516.) So one for the care of the aged and feeble was upheld in *Matter of Robinson* (203 N. Y. 380, 388), and a trust for the care and education of crippled children met the court's approval in *Matter of Potts*

(205 App. Div. 147; affd., 236 N. Y. 658.) Gifts, even to uncertain beneficiaries, are now recognized by statute. (Real Prop. Law, § 113; Pers. Prop. Law, § 12. See *Matter of MacDowell*, 217 N. Y. 454.) The benevolent, charitable and educational character of the trust is clearly set forth by the settlor. (*Allen v. Stevens*, 161 N. Y. 122; *Matter of Graves*, 171 id. 40.)

A trust intended to reward successful endeavor in the field of medical research is certainly charitable if its purpose be the universal advantage of mankind. On the other hand, where the trustees are free to apply the income to educational institutions organized for private profit, of course it is not a charitable trust. That was so determined in *Matter of Shattuck* (193 N. Y. 446).

In the instant trust we find the expression of a purpose which is clearly charitable within the settled definition of the term. (*Sherman v. Richmond Hose Co.*, 230 N. Y. 462.)

It is urged, however, that this trust, so conceived and dedicated to outstanding humanitarian and charitable objects, is, nevertheless, invalid by reason of its payment to the trustee of principal commissions. To quote its exact language: " Upon my death said Trustee shall be entitled to commissions on principal at the rate of one per cent (1%) as provided in said Trust Agreement, upon all property then held by it as Trustee under said Agreement; after my death said Trustee shall be entitled to commissions upon the principal and income of the perpetual trust fund hereinabove established, at the following rates: upon the income thereof, commissions at the rates from time to time fixed by the laws of the State of New York; and upon the principal thereof, commissions at the rate of one per cent (1%) every fifteen years, the first such commission on principal to be taken fifteen years after the date of my death." To put it more plainly, it is contended that the trustee's commissions on principal constitute such a diversion of the fund to a non-charitable or private use as to bring it within the condemnation of the law against perpetuities.

I am unable to follow the reasoning of the objectants, since the plain purpose of the trust was its creation for charitable purposes only. The compensation provided for the trustee is a mere incident in the administration of any charitable trust requiring for the discharge of its functions the necessary employment of a compensated employee. Surely, the administration of the substantial trust funds in itself alone constitutes a major duty of the trustee. The distinction is to be made between the *declared purposes of the trust* and the provisions of the instrument calling for the manner of its *administration*.

The Appellate Division in *Matter of Judd* (242 App. Div. 389, 390) reversed the surrogate's determination that a testamentary trust which provided for payments to persons making greatest advancement in discovery of or who shall eventually discover a cure for cancer, was invalid as a charitable trust because it contained a gift to an individual for his own use.

Mr. Justice UNTERMYER, writing the unanimous opinion, *inter alia*, said: " If the purpose of the trust were merely to benefit research workers in cancer it would not be saved by reason of the useful nature of their work. (*Matter of Beekman*, 232 N. Y. 365; *Matter of Kennedy*, 240 App. Div. 20; affd., 264 N. Y. 691.) But this involves, we are convinced, a misconception of its purpose. That purpose is the encouragement of research in the field of cancer by rewarding those who shall have been most useful in the investigation of a subject which has baffled the medical profession. It is not to be supposed that it was the intention to enrich the unidentified individuals who might happen to be successful in this research work, except as this was incidental to the achievement of a purpose to benefit mankind. The real beneficiaries are those afflicted who are expected to benefit by the research which may be stimulated by the hope of pecuniary reward. *The trust is not invalid merely because it contemplates payments to individuals for their private use. That situation exists in any charitable trust which requires for the discharge of its functions the employment of compensated employees. They, too, receive emoluments ' for his or their own use.' Yet it will not be contended that such charities are created in order to compensate their employees. They are created, as was the trust here, to secure the advantage of their services in effectuating the objects of the charity. Wherever the question seems to have arisen it has been decided in this way.*" (Italics mine.)

Consideration is to be given to the ultimate results to be accomplished by the creation of the trust, and not the incidental benefits that may accrue to certain individuals. Nor is a valid charitable trust affected by a provision for a trustee's compensation. The settlor is perfectly free to fix such compensation as she may deem fair, just and reasonable. I am not aware of any statutory inhibition that restricts such compensation to a trustee under a similar indenture. Considering the nature and permanency of the trust, not only in administering this million-dollar fund, but in exercising its best judgment by careful investigation to determine the proper organizations worthy of the charities so created, keeping abreast with the times and spirit of the age, making such timely changes as new conditions may arise — the compensation fixed in

the trust agreement is not excessive or unreasonable. That it may exceed the statutory commission rate does not, in my opinion, make it a dispositive provision which places it in the category of a gift or legacy, rather than a clearly intended *administrative* provision. Nearly half a century ago, in the now famous *Matter of Tilden* (44 Hun, 441, 444), upon an executors' accounting, the question presented related to their commissions. The surrogate decided that the compensation provided for in the will in excess of the statutory compensation was a legacy. In modifying the decision of the lower court in this respect, the Appellate Division said: " *The provisions in the will were intended to be as compensation for services rendered, to be in no respect a gift, but an authority to charge for their services a certain sum.*"

In *Matter of Brigg* (39 App. Div. 485) the court held that the provisions of a will appointing guardians of testator's children which directed that each should receive for their services $500 did not constitute a legacy but a fixing of their compensation.

In the well-considered case of *Richardson* v. *Richardson* (145 App. Div. 540, 544) the testator made provision for the executors' compensation by awarding a definite sum for their services. Said the court: " The compensation provided by the will is not a legacy, and does not abate with the legacies, but is compensation carefully determined by the testator, and directed to be paid for the services to be rendered, and is, therefore, to be paid in full."

Where the right depends upon the actual performance of services, the amount specified is not a gift, but purely compensative. (*United States* v. *Merriam*, 263 U. S. 179; 44 S. Ct. 69; 68 L. Ed. 240; 29 A. L. R. 1547.)

Where the intention of a settlor is to compensate the fiduciary for services to be rendered and not to make a gift, the cases recognize the amount given solely as compensation to be earned, and not as a gift. The cases agree that the test is, whether the trustee is entitled to his compensation merely by qualifying without rendering any service. If he is, then the provision of the instrument creates a *gift*. On the other hand, if the clause in the instrument directs the performance of services by the trustee, then the amount to be paid is clearly *compensation*. (*Fletcher* v. *Hurd*, 60 Hun, 576; *Matter of Mason*, 98 N. Y. 527.) Plainly, the settlor in the case at bar intended the commissions on principal to the trustee only as compensation and not as a gift.

The courts have very properly been most liberal and practical in construing the provisions of a charitable trust instrument with a view of sustaining it. (*Matter of Durbrow*, 245 N. Y. 469; *Matter of Allen*, 111 Misc. 93; *Matter of McGeehan*, 115 id. 737.) In *Matter*

*of Robinson (supra)* the principle was laid down that "a construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred."

The cases relied upon by the guardians — *Matter of Durbrow* (245 N. Y. 469); *Matter of Kelley* (138 Misc. 190); *Matter of Beekman* (232 N. Y. 365); *Butterworth* v. *Keeler* (219 id. 446); *Matter of McLoghlin* (139 Misc. 202); *Matter of Huber* (86 App. Div. 458); *Matter of Gould* (156 N. Y. 423) — all involved a determination on the purposes of the trust, and do not hold that incidental administrative provisions of the instrument to carry out its charitable purposes vitiates an otherwise valid charitable trust. *Matter of Sprague* (46 Misc. 216) is no authority for the proposition that commissions on principal is a gift to the trustee. There the executor received an annuity of $500 in addition to all charges, allowances and disbursements allowed by law. The dictum by the surrogate clearly referred to the peculiar facts in that case. Here the settlor created no annuity or legacy for the trustee.

Attention has also been directed to provisions of the Tax Law in determining the sum allowed as a deduction for commissions in fixing the inheritance tax. Section 226, since repealed, only limited the amounts deductible for tax purposes on commission accounts. That the object of this statute was to prevent an evasion of tax payment through the device of declaring a designated gift or bequest to be in lieu of commissions, is clear, although section 249-s of the Tax Law now permits no deduction for commissions.

A mathematical computation of the trustee's commissions in the instant case, calculated on principal at the directed distant intervals, is even less than the statutory rate. Merely because the settlor directed that her trustee should thus receive the full statutory rate does not render the charitable trust invalid in whole or in part. It is fully recognized, too, that the statutory commission is not paid as compensation merely for receiving or paying out, but represents compensation for services rendered in connection with the *administration* of the fund.

Accordingly, I hold that the settlor created a valid charitable trust, and that the provision for payment of commissions on principal to the trustee was not a diversion of the corpus of the fund for private use which affected its validity.

### ADMINISTRATION OF THE TRUST FUND.

I have carefully examined the filed voluminous account. From the evidence adduced and the record made herein, the plaintiff-trustee is to be commended for its admirable administration of

the estate in preserving the large fund during the critical period of the nation's financial crises.

During her lifetime the settlor took a personal interest in the management and performance of the trust agreement by her trustee. Not only did she exercise her right to amend the trust agreement by at least a half dozen such instruments, but investments of purchases and sales of securities had to and did receive her express written approval. The correspondence in evidence attests the careful consideration which the plaintiff accorded her wishes, and the placing of all its wide experience and statistical investigations at her disposal and in the discharge of its duties.

In this connection it may not be amiss to direct attention to well-recognized rules for the guidance and responsibility of trustees.

(a) A trustee is called upon to use such prudence and diligence in the care and management of a trust estate as prudent men would employ in their own affairs. (*Matter of Clark*, 257 N. Y. 132; *Purdy* v. *Lynch*, 145 id. 462.)

(b) Before liability for a surcharge can be predicated against a trustee, the burden is upon the objectant to show negligence. (*Matter of Wilson*, 127 Misc. 518; *Matter of Winburn*, 140 id. 18.)

(c) It is the responsibility of a trustee to exercise his own judgment as to the proper time to dispose of securities, and an exercise of erroneous but honest judgment that may result in loss due to unforeseen circumstances, does not make him liable. (*Matter of Varet*, 181 App. Div. 446; *Matter of Feitner*, 224 N. Y. 573; *Matter of Weston*, 91 id. 502.) The rule is clearly stated in *Matter of Junkersfeld* (244 App. Div. 260, 263): " Numerous authorities may be cited in support of the proposition that an executor or trustee is not to be personally penalized for present or past economic conditions. Where he has been confronted with a dilemma involving a decision, in the case of a falling market, to hold securities in hope or expectation of a rise in values, or to sell at a reduced price, the disposition of the courts, acting in retrospect, has been and is not to deal harshly with him in the event that his judgment has proved wrong."

(d) The control exercised by the settlor under the deed of trust necessarily required the trustee to comply with her directions concerning investments. (*Denike* v. *Harris*, 84 N. Y. 89.) The provisions of the trust also authorized the plaintiff to retain any securities in its hands " *so long as it may deem proper*," and was not limited to legal investments, while the settlor reserved the right to instruct her trustee to sell any security at any time, and released it from any liability therefor. (See *Matter of Reid*, 170 App. Div. 631.)

Similarly, the provision in the trust indenture releasing the trustee from all financial liability because of the retention, sale or investment of any part or all of the trust fund, is a valid exemption of liability to the trustee where it has exercised good faith in the administration of the fund. (*Crabb* v. *Young*, 92 N. Y. 56.)

With these fundamental guides for the conduct of a trustee in the management of his trust, I now proceed to a consideration of the objections to the account, the last issue to be determined by me.

### OBJECTIONS TO THE ACCOUNT.

I. Referring to guardians' objection 1, the trustee concedes that the figures shown in Schedule D, section 3, represent the net loss, but that this is the form in which it usually corrects its accounts, and that there is no statement in the account showing the gross losses. It also admits that the first two pages of Schedule A attached to this objection, showing the gross losses, are correct subject to minor corrections that may be typographical, and also to the correction that the Victory and Liberty loans were not sold but redeemed, and that the purchase price of $1,000 par value Louisiana Power and Light Company 5's, 1957, omitted from page 1 of Schedule A, and is in the sum of $1,006.25. The trustee also contends that there should be a credit of $4,676.78 on the sale of rights on two of the securities included in the schedule, namely, Tobacco Products Corporation and Columbia Gas and Electricity. By correcting the account as above indicated, the nature and extent of the losses sustained are thus clarified and fully meets the objections urged.

II. Concerning objection 2, the trustee intended to indicate that the value of the trust interests and mortgages was not the present actual value, but merely to set forth its inventory value which was carried in the account appearing in Schedule G, section 3. This is a bookkeeping entry which does not affect the same, and the objection is overruled.

III. Objection 3. concerns a claimed loss of $24,610.20 in the purchase of designated securities. An examination of each item shows an investment in recognized and leading railroad and utility companies. The trustee and its officers have fully explained the items criticized. No proof has been adduced upon which a basis for any surcharge could be made. This objection is overruled.

IV. Objection 4 criticizes the purchase of three mortgage participation certificates.

(a) The trustee invested $3,600 in a participation of a $60,000 guaranteed mortgage of the Braxted Holding Corporation. This it purchased from and was guaranteed by the Lawyers Title and

Guaranty Company, which was one of the recognized larger mortgage companies authorized to do business in this city. Under the terms of its guaranty, the company was named exclusive agent to collect the interest on the bond and mortgage, and it also undertook to require the owner to pay all taxes and assessments. That for many years investments in guaranteed mortgages on real estate in this city were considered sound and legal for trust funds is indisputable. Defaults in the payment of principal and interest in all the leading mortgage companies carries no implication or charge of negligence on the part of the trustee, and this objection is overruled.

(b) The trustee invested $48,000 in the purchase of a participation in a $1,636,000 mortgage of the Nortview Investing Corporation on premises located on the southwest corner of Park avenue and East Seventy-first street. This was a direct mortgage loan to the trust company. Both the interest and amortization payments on account of principal have been regularly met up to the accounting period. The same comments may be here repeated concerning the nature and legality of this investment as the Braxted Holding Corporation mortgage. It is noteworthy that the settlor herself made several transfers to this trust of similar investments. This objection is also overruled.

V. Objection 5 seeks to surcharge the trustee with a loss of some $89,815.13 resulting from the sale of trust securities. The reasons which actuated the trustee in disposing of the securities listed in Schedule B of the guardians' objections were fully gone into by its investment officer, who gave satisfactory and impelling reasons for their sale. No contrary evidence was introduced, and this objection is overruled.

VI. This objection relates to the alleged retention by the trustee of securities for an unreasonable time with a resultant loss through sale in the sum of $32,161.26, which the guardians urge should be surcharged.

(a) The settlor transferred to the trustee as an investment sixty-two shares of the capital stock of the New York Title and Mortgage Company. This company was also one of the leading mortgage companies in the city. One of the trustee's investment officers, Mr. Anderson, testified at length of his review of its financial statements and his best judgment and experience dictated that the stock should not be sold. This evidence was not contradicted, and under the rules above enunciated in the discussion of the duty and obligation of trustees, the trustee herein cannot be held responsible for exercising its best judgment. This objection is overruled.

(b) This title company was merged in March, 1930, with the Manhattan Company and the trust received 217 of the shares in this latter company in exchange for the sixty-two shares of the title company's stock. The testimony showed that the capital stock of a leading bank, the Bank of Manhattan Company, was owned by the Manhattan Company. The investment officer of the trustee was in close touch with the earnings of the company, and detailed his review of its finances. The sale of this stock was at the direction of the donor under her reserved power. I overrule this objection.

VII. This objection seeks to surcharge the trustee with the sum of $142,886.37, a loss alleged by reason of its failure to sell securities detailed in this objection. The evidence submitted by the trustee on each item clearly justified their retention. Particularly, the holding of 144 shares of the capital stock of the Commercial Trust Company of New Jersey was justified. This was transferred to the trustee by the settlor herself, and at the time was considered a standard investment of a high order. Mr. Anderson testified at great length concerning his investigations into the financial condition of this company, and fully justified his decision not to sell the stock during the depression period. In fact, its market value has, since the accounting period, substantially increased. This objection is overruled.

VIII-A. This objection is overruled. There was no negligence on the part of the trustee in connection with the foreclosure and sale of the property at 166–170 Broadway.

VIII-B, IX, X and XI. The guardians contend that the amounts set forth in these objections were improperly credited to income and should be transferred to the principal account of the trust. The trustee frankly concedes the objections to be well taken, and explains that it was obliged to compute the amount of income payable to the estate of the donor representing income which accrued before her death. The items concern interest on mortgages in default so that the exact amount of the income could not be determined. Under the circumstances, the items involved in these objections should be transferred to the principal account of the trust, thus keeping in abeyance the amount of income due to the donor's estate until the liquidation of the properties.

XII. The supplemental objection filed by Mr. Fain, as guardian for the infants represented by him, is overruled. This objection generally states that additional funds and securities added by the settlor constituted intestate property, and, therefore, formed no part of the trust fund. There can be no question that under the clearly expressed terms of the trust the settlor had the right not only

to amend the terms of the agreement, but to add to the fund, and this she very properly did by the exercise of her absolute power so to do.

I have already commented upon the management of the fund by the trustee. The account is in all respects approved, subject to the changes made necessary by the concessions herein referred to, and mathematical corrections and typographical errors found, and on items sold and moneys received therefor, subsequent to the date of the accounting period.

All the securities represented by the trust fund have been examined and found to be intact.

Submit findings and judgment in accordance herewith.