## POTTER v. BOWERS.
### No. 312.

Circuit Court of Appeals, Second Circuit.
May 3, 1937.

Middlebrook & Sincerbeaux, of New York City (Frank H. Sincerbeaux and Robert S. Dornon, both of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (William F. Young, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Henry J. Braker died September 1, 1908, leaving a will which bequeathed to his trustees named, $1,000,000 with the direction that the trustees incorporate an institution to be known as the Braker Memorial Home for the maintenance of needy men and women over the age of 50 years and that the legacy be transferred to the Home after its incorporation. It was to be incorporated as soon as it could conveniently be done. A codicil provided that if the trustees failed to effect the incorporation then the trust was to be executed by the Supreme Court of the State of New York to the end that the Braker Memorial Home should be duly incorporated and established. The home was to be located in the State of New York or New Jersey. The expenses for maintaining the institution, it was directed, should be at all times conservatively within the income derived from the balance of the bequest after the purchase of the land and erection of the building. It was to be nonsectarian in character.

In 1911 the executor of the estate caused to be prepared a certificate of incorporation for the "Braker Memorial Home." The purposes and powers of the corporation set forth in the certificate were: "The purposes for which the corporation is to be formed are to erect, establish and maintain a home for needy men and women who shall be over fifty (50) years of age without regard to their condition or religious belief, as provided for in the last will and testament of Henry J. Braker, deceased, as a memorial * * * The Home is to be non-sectarian in its character and to be managed by a board of directors or trustees of the Protestant faith * * *."

This certificate was approved by the New York State Board of Charities May 17, 1911, and by a Justice of the Supreme Court of the State of New York June 9, 1911. The Secretary of State, however, refused to file the certificate of incorporation because it provided for nine directors and only three were named therein to act until the first annual meeting. This certificate was never filed. After appellant was appointed executor, he had another certificate prepared with powers and purposes identical with the first. This was approved by and filed with the Secretary of State April 7, 1924, after approval by the Supreme Court of the State of New York and the New York State Board of Charities. The Home was built in New York City and formally opened January 14, 1929.

No question has been raised as to the charitable purposes and activities of the Home.

The appellant, after his appointment July 21, 1923, discovered that his predecessors had never filed any income tax returns for the estate. He communicated with the Commissioner of Internal Revenue, who advised him to file returns, and he did so June 15, 1925, for the years 1917, 1918, 1919, 1920, 1921, and 1923. In each return he took deductions for 85½ per cent. of the net income received by him and his predecessors as executors, claiming that such income was, during the respective taxable years, definitely and permanently set aside for the Braker Home, a charitable corporation.

By January 1, 1917, all the legacies under the will had been paid except one of $10,000 to a charitable corporation, which was later paid without interest. All that thereafter remained in the hands of the executors was the $1,000,000 for the Home, together with interest allowed by law which, under the laws of New York, was 6 per cent., to begin one year after September 22, 1909, the date of the issuance of letters testamentary. Section 1819, Code of Civil Procedure, section 146, Decedent Estate Law (Consol.Laws, c. 13); Matter of Rutherfurd, 196 N.Y. 311, 89 N.E. 820. This interest, however, was never fully paid.

At the death of the testator's widow, a contest was instituted by three children of a former marriage resulting in an adjustment which reduced the interest receivable by the Braker Home. The executor never conceded the position of the residuary legatees; the gift to the Braker Home was never held to be invalid.

The estate was distributed in 1925 pursuant to court decree and approximately 85½ per cent. of the net income earned during the taxable years in question remained with the appellant for distribution to the Home. Exemption is claimed only for the income actually distributed to the Home.

The Revenue Act of 1916, in effect during the taxable year 1917, sections 2 (b) and 11 (a), 39 Stat. 756, 757, 766, as amended by the Revenue Act of October 3, 1917, 40 Stat. 300, allows exemption from income tax for income of an estate "received by any * * * corporation" organized and operated exclusively for charitable purposes. The Revenue Act of 1918, section 219 (b), 40 Stat. 1057, 1071, effective during the taxable years 1918, 1919, and 1920, allows exemption for the income of an estate which during the taxable year is "paid to or permanently set aside for" a corporation organized and operated for charitable purposes. The Revenue Act of 1921, section 219 (b) and section 214 (a) (11), 42 Stat. 227, 246, 241, effective during the years 1921 and 1923, exempts the income of an estate which is "during the taxable year paid or permanently set aside" for a corporation organized or operated for charitable purposes.

The exemption of income of an estate for tax under the 1918 and 1921 acts is not exclusively conditioned upon actual payment of the income to an exempt corporation during the taxable year. It is sufficient if the income is permanently set aside for the corporation. Bowers v. Slocum, 20 F.(2d) 350 (C.C.A.2). The question presented is whether the charitable corporation ultimately entitled to the income must be in existence during the taxable year in order to permit the exemption.

The will mandatorily directed the formation of a corporation admittedly exempt from income tax under these acts. The $1,000,000 was set aside by the will and under the state law annual income at 6 per cent. was to be added thereon long prior to the taxable years in question. It is of no consequence that the amount of in-

come actually added, and for which exemption is alone claimed, was reduced by the aforementioned settlement. Both the fund and the disputed income were dedicated to a charitable purpose which either the trustees or the state court would carry out. Incorporation was a certainty and so was the ultimate disposition of the income; only the time of accomplishment was doubtful.

The Acts of 1918 and 1921 refer to income "permanently set aside for * * * any corporation, organized and. operated exclusively" for charitable purposes. We believe the appellant is justified in asserting that the words "organized and operated" relate to the nature of the corporation when formed rather than to the time of its formation. The crucial fact is that the right of the charitable organization to the income was irrevocably vested and not contingent. Compare Charles P. Moorman Home v. U. S., 42 F.(2d) 257 (D.C.W.D.Ky.). The gift both of principal and income was immediate and is so considered by the New York law. Matter of Le Fevre's Estate, 233 N.Y. 138, 135 N.E. 203; In re Potts, 205 App.Div. 147, 199 N.Y.S. 880. And since it was an irrevocably vested right and an immediate gift, the exemption must be allowed since the income was "permanently set aside." Bowers v. Slocum, supra.

The objection is made that the exemption should be denied since article forty-third of the will directed that the beneficiaries of the various trusts therein provided for should receive interest at 4½ per cent. until such time as the trusts were created. It is argued from this that though amounts may have been added to the original fund bequeathed to the Home, these were not in the nature of income to which the statutes specifically refer. It must be remembered that all the income earned by the estate over the taxable years in question was set aside for a charitable purpose except for the amounts withdrawn under the terms of the settlement; and as to the latter no claim of exemption is made. But the direct answer to this objection is that article forty-third does not include the legacy to the Braker Memorial Home. A reading of the will convinces us that it relates to the numerous private trusts therein created and to a class of beneficiaries within which the Memorial Home does not fall. The gift both of principal and income was to be turned over outright to the charitable organization upon its incorporation.

Therefore, we hold that under the Acts of 1918 and 1921, the income was "permanently set aside" and also that the charitable corporation need not° be in esse in the taxable year. Sun-Herald Corp. v. Duggan, 73 F.(2d) 298 (C.C.A.2), certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251, is not controlling, since it involved a different exemption statute and related to the taxability of a business corporation, though its income may have passed to an exempt corporation. It cannot bind us in the construction of a statute exempting the income of an estate distributable to a charitable corporation. Cf. Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 97 A.L.R. 207.

Moreover, our construction seems to be confirmed by a comparison of the 1916 Act with the later acts. In the former, income is exempted which is "received by" any charitable corporation. In other words, the actual enjoyment of income by the charity is postulated. The corporation must be an existing one; and the mere certainty of future enjoyment is insufficient. Cf. Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99.

Recovery may be had for taxes paid. for all years except 1917.

Judgment reversed.